PEOPLE ex rel. PEABODY v. CHANLER, Sheriff, et. al.

(Supreme Court, Special Term, Westchester County. October, 1908.)

1. VENUE (§ 52*)—CHANGE OF VENUE—CONVENIENCE OF WITNESSES.
    It is not the practice to change the place of trial of a civil action to New York county merely for the convenience of witnesses alone.
    [Ed. Note.—For other cases, see Venue, Cent. Dig. § 76; Dec. Dig. § 52.*]

2. VENUE (§ 52*) — INSANE PERSONS—RESTORATION TO SANITY—INQUISITION—CHANGE OF VENUE.
    The trial to determine the present sanity of a prisoner committed from New York county to the Matteawan State Hospital on his acquittal of murder on the ground of insanity will not be transferred to New York county for the convenience of witnesses, on it appearing that most of the witnesses will be those testifying to events transpiring since the prisoner's commitment to the hospital, few of whom are residents of New York county, though expert witnesses reside in New York county.
    [Ed. Note.—For other cases, see Venue, Cent. Dig. § 76; Dec. Dig. § 52.*]

3. HABEAS CORPUS (§ 85*)—PROCEEDINGS—PRESUMPTIONS.
    The court, on habeas corpus to determine the present sanity of a person committed to the State Lunatic Asylum on his acquittal of murder on the ground of insanity, will assume that the verdict of insanity declared the truth.
    [Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 78; Dec. Dig. § 85.*]

4. VENUE (§ 52*) — INSANE PERSONS — RESTORATION TO SANITY—INQUISITION—CHANGE OF VENUE.
    A statute providing that the issue of the present sanity of a prisoner committed to the State Lunatic Asylum on his acquittal of murder on the ground of insanity shall be summarily tried and determined does not con-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

template any long drawn out inquiry by the testimony of a multitude of expert witnesses, and two expert witnesses on each side will be sufficient; and hence the trial will not be changed to the county from which the prisoner was committed, to save expense incurred for expert witnesses residing in such county.

[Ed. Note.—For other cases, see Venue, Cent. Dig. § 76; Dec. Dig. § 52.*]

5. DISTRICT AND PROSECUTING ATTORNEYS (§ 7*)—OFFICIAL DUTY OF DISTRICT ATTORNEY.

The district attorney of the county from which a prisoner is committed to the State Lunatic Asylum until he becomes sane must defend the commitment, on habeas corpus to determine the present sanity of the prisoner, though Code Civ. Proc. § 2038, requires that notice be given to the district attorney of the county in which the asylum is located.

[Ed. Note.—For other cases, see District and Prosecuting Attorneys, Cent. Dig. § 34; Dec. Dig. § 7.*]

6. VENUE (§ 45*) — INSANE PERSONS — RESTORATION TO SANITY—INQUISITION— CHANGE OF VENUE.

The trial to determine the present sanity of a prisoner committed from New York county to the State Lunatic Asylum on his acquittal of murder on the ground of insanity will not be transferred to New York county for the convenience of the district attorney of New York county, charged with the duty of defending the commitment.

[Ed. Note.—For other cases, see Venue, Cent. Dig. § 67; Dec. Dig. § 45.*]

Proceedings by writ of habeas corpus by the People of the State of New York, on the relation of A. Russell Peabody, against Robert W. Chanler, Sheriff of the County of Dutchess, and another, to determine the present sanity of Harry K. Thaw. Motion to transfer the trial to New York county denied.

Wm. Travers Jerome, for Superintendent of Matteawan State Hospital.

Asa Bird Gardiner, for Attorney General.

Charles Morschauser, for Harry K. Thaw.

MILLS, J. This is a proceeding under a writ of habeas corpus to determine the present sanity of Harry K. Thaw. Such issue having been joined by the return and traverse herein, and the trial thereof having been set for the 12th of October, instant, at White Plains, the district attorney of New York county, appearing for the superintendent of the Matteawan State Hospital, one of the defendants herein, now moves that the place of trial of such issue be changed from this (Westchester) county to New York county. This motion is made upon the grounds (1) of convenience of defendants' witnesses; (2) of the contention that the expenses in employing the necessary expert witnesses will be very great, and that, if the matter be tried outside of New York county, the authorities thereof will not make any special appropriation to defray such expenses, and that such district attorney cannot otherwise pay or incur them, and that, therefore, such expenses, in that event, must fall upon the counties of Westchester and Dutchess, or upon one of them; and (3) that such district attorney is so situated in reference to his duties in New York county that he cannot attend to the trial hereof in this county, and that he has a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

special familiarity with the matter, which no other district attorney or counsel can easily or soon attain. After carefully reading the moving affidavit and considering the matters involved, I conclude that the motion should be denied for the following reasons:

First. As to convenience of witnesses:

If it be assumed that the practice prevailing in civil actions applies to a change of the place of trial in this proceeding, it is not the practice in this district to change the place of trial of a civil action from one of its counties to New York county for the convenience of witnesses alone. Moreover, the residence of expert witnesses is to be little considered in this regard. They are employed and paid, and the expenses in reference to them should not be substantially greater if the trial be had at White Plains than if in New York City.

As to the witnesses of facts, it will not be necessary to call here any who testified at either of the previous trials, because Thaw's counsel has stipulated herein, in open court, that any testimony as to facts taken at either of those trials or the previous hearing in a proceeding similar to this may be read in evidence from the stenographer's minutes, subject only to objection as to competency, as though the witness were here present and re-examined. Therefore most of the witnesses as to facts will be those who can testify to events transpiring since Thaw's commitment to the hospital at Matteawan. Few of those witnesses can be residents of New York City. The stipulation above referred to is understood by the court to have been made by Thaw's counsel upon condition that the place of trial herein remain unchanged.

Second. As to the alleged great expenses of expert witnesses:

I cannot perceive the need of any great expense in this respect. The moving affidavit shows clearly that the large cost of special study and preparation on the part of such experts has already been incurred and paid by New York county. There should be no great expense in procuring two or three such experts, so already specially prepared, to attend at White Plains and testify to their conclusions. Moreover, the great question here is not the validity of the verdict in declaring that Thaw, on the 25th of June, 1906, when the homicide was committed, was insane to the degree either that he did not know the nature or quality of the act by him then committed, or did not know that such act was wrong, but is as to his condition since his commitment; that is, whether or not he has become sane to the degree that his discharge will be without menace to the public peace or safety. In a controversy, as this in substance is, between the people and Thaw, the court will assume that the verdict was warranted and that it declared the truth.

As to Thaw's condition since commitment, the medical authorities of the hospital at Matteawan ought to be of the best witnesses, both as to facts and opinions, if, as in the absence of proof will be assumed, they be free from any bias or prejudice. They are certainly available as such witnesses without money and without price. The statute requires that the issue in this proceeding shall be summarily tried and determined. It does not, I think, contemplate any long drawn out inquiry by the testimony of a multitude of expert witnesses. It seems

to me that two purely expert witnesses upon each side will be sufficient. This limitation does not affect the calling of witnesses, lay or professional, to testify to facts and the impressions upon their minds then produced by such facts.

It appears by our statutes, as they now are, that a person confined under such a commitment as that of Thaw to the Matteawan Hospital may apply to successive courts or judges for a writ of habeas corpus, and that each court or judge in turn is compelled, under a personal penalty or forfeit to the person of $1,000, to issue such writ, provided only that the petition be regular in form, and that the determination in one proceeding under such writ is no bar to a like subsequent proceeding under a new writ. If any such expense as is intimated in the moving affidavit must be incurred by or in behalf of the defendants in each such successive proceeding, a most deplorable condition exists. I do not believe that there is any such necessity.

Third. As to the liability for the necessary expenses of making a defense on the part of the defendants:

It seems to me that it is manifestly the legal duty of the district attorney of New York county to defend here or anywhere the force of the commitment of Thaw which he secured by the decree of a court in that county. The legal question presented by these proceedings is simply this: Has the term of that commitment expired? That term was merely until Thaw "becomes sane." If such district attorney believes that that term has not expired, it is clearly, I think, his duty to defend such commitment against the assault in effect here made upon it, just the same as it would be his duty to sustain a decree of conviction against an appeal if he had obtained such decree. Apparently the only method of assailing the decree of commitment obtained by him in this case is through these proceedings. Indeed, the first ground of assault herein was the contention that such decree of commitment was void on its face, because not based upon a verdict finding the fact of then present sanity. Would it not be a strange thing to say that such district attorney was under no official obligation to defend that decree from that particular assault merely because, under the prevailing legal practice, the attack was not made in his own county? It is, I think, his plain legal duty to sustain that decree wherever and upon whatever ground it may be assailed. Whatever expenses he necessarily incurs in making such defense in a proper manner must of necessity be a charge upon his county. It does not seem that the provision of section 2038, Code Civ. Proc. requiring notice here to be given to the district attorney of Dutchess county, should be regarded as relieving the district attorney of New York county from appearing and defending herein.

Fourth. As to the attendance here of the district attorney of New York county at the trial of the issue joined:

I quite agree with the moving affidavit that no one else (except, possibly, it might be the learned counsel who defended before the jury) can be nearly as familiar with the case as the district attorney of New York county, and that it is important, in the interests of justice, that he defend the defendants here. I am confident that he can

do so substantially as well here as in New York City, and that he will find, upon reflection, that a conscientious regard for his official obligations will not permit him to withdraw from such defense. However, that is a matter for him, not this court, to decide; and I would not express any opinion in reference to it, except for the intimation, in the moving papers and upon the argument, that in case this motion be denied he may feel compelled to withdraw.

In conclusion, I think that it is clearly my duty to try the issue, and shall proceed to do so upon the day assigned.

The motion is therefore denied.