### 6144. JONES *v.* HILL.

1. By the express provisions of the code (Civil Code, § 4860; Penal Code, § 1315), a judge to whom a petition for habeas corpus is presented may decline to grant the writ, without being subject to the penalty of twenty-five hundred dollars imposed by the statute, when it plainly appears from the petition that there is no legal ground for the writ.

2. In the present case the suit for the penalty was properly dismissed on demurrer, because the defendant judge, to whom the application for habeas corpus had been presented, after due consideration, properly declined to issue the writ.

DECIDED SEPTEMBER 22, 1915.

Action for penalty; from city court of Atlanta—Judge Reid. September 30, 1914.

*J. V. Pool,* for plaintiff.

*Reuben R. Arnold, Spencer R. Atkinson, Marion Smith,* for defendant.

RUSSELL, C. J.　R. M. Jones brought this suit against Benjamin H. Hill, one of the judges of the superior court of the Atlanta circuit, for the recovery of the penalty specified in the code (Civil Code, § 4860; Penal Code, § 1315), for refusing to grant him the writ of habeas corpus. The suit was amended, and, thereafter coming on to be heard on general demurrer, was dismissed on the ground that it did not set forth sufficient facts to constitute a cause of action. The plaintiff excepts to the dismissal of his suit for the penalty, and makes the contention that in performing the duty of granting the writ of habeas corpus, a judge acts only in a ministerial capacity.

The code section upon which the suit is based had its origin in an act passed during the war between the States, in the year 1863 (Acts 1863-4, p. 45). No doubt the exigencies arising from the conscript act caused its passage. We agree, however, with counsel for the plaintiff that this is immaterial, for the statute was apparently modeled after section 10 of article 1 of the habeas-corpus act of 31 Chas. II (1679) (Hotchkiss, Statute Law of Georgia, 305), which reads as follows: "Provided also, and be it further enacted by the authority aforesaid, that it shall and may be lawful to and for any prisoner and prisoners as aforesaid, to move and obtain his or their habeas corpus as well out of the high court of chancery or court of exchequer, as out of the courts of king's bench or common pleas, or either of them; and, if the said lord chancellor or lord keeper, or any judge or judges, baron or barons for the time being, of the degree of the coif, of any of the courts aforesaid, in the vacation time, upon view of the copy or copies of the warrant or warrants of commitment or detainer, or upon oath made that such copy or copies were denied as aforesaid, shall deny any writ of habeas corpus by this act required to be granted, being moved for

as aforesaid, they shall severally forfeit to the prisoner aggrieved the sum of five hundred pounds, to be recovered in manner aforesaid." Section 4860 of the Civil Code reads as follows: "When any person shall apply for a writ of habeas corpus to any judge whose duty it is to grant said writ, and the same is refused, the judge so refusing to grant said writ shall forfeit to the party aggrieved the sum of twenty-five hundred dollars, to be recovered in any court of law in this State having jurisdiction of the same." Section 1315 of the Penal Code is in similar language. It is apparent, from a comparison of section 10 of the statute of Charles II, above quoted, with the code section, that the gist of our law is almost an exact reproduction of the English statute so far as the liability of the court for refusal to grant the writ is concerned. However, the contention that a judge to whom an application for the writ of habeas corpus is made is compelled perforce to issue the writ (leaving the consideration of the merits of the proceeding until the hearing) is not sustained. The officer whose duty it was under the English statute to issue the writ of habeas corpus was only required to do so "upon *view* of the copy or copies of the warrant or warrants of commitment," or "upon oath made that such copy or copies were denied." Likewise, under the code section referred to, it is only the refusal of a judge to issue the writ when it is his duty to grant it that subjects him to penalty.

The same discretion of preliminary investigation will be found to be conferred upon the judges in various similar statutes in other jurisdictions, exposing a judge to penalty for refusing to grant the writ of habeas corpus. In Illinois any judge empowered to issue writs of habeas corpus who corruptly refuses to grant the writ where legally applied for, in a case where it may lawfully issue, or who shall, for the purpose of oppression, unreasonably delay issuing the writ, is subject to a penalty of one thousand dollars. By the provisions of the Kentucky code, a judge who refuses to grant the writ when legally applied to forfeits five hundred dollars. In Mississippi the wilful refusal or neglect to grant the writ subjects the judge to civil liability to the aggrieved party. In Wisconsin and in Michigan the refusal to grant the writ, when it is legally applied for, imposes liability upon the judge for one thousand dollars. In New York (Code, § 2020) a judge to whom a petition for the writ of habeas corpus is presented must, under penalty of one thousand dol-

lars, grant it without delay, *unless it appears from the petition itself* or the documents annexed thereto that the petitioner is prohibited by law from prosecuting the writ. The plaintiff in this case insists that the terms of the code section are "imperative upon the judge to whom the application is presented, and he has no discretionary power;" that "the judge is compelled to grant the writ and give the applicant a hearing, at which time he acts as a judge and can use his discretion as to what should be done with the prisoner, and he is responsible to no man for his acts."

The first question which presents itself, therefore, is whether the judge to whom an application for the writ of habeas corpus is presented has any discretion, or whether he is compelled, merely in a ministerial capacity, to issue the writ. The present case appears to have been the first action ever brought under the act of 1863 now embodied in the code section referred to, and is certainly the first one to be carried to a court of last resort in this State; and for that reason there is no precedent to guide us. It is well settled, as a general rule, that a judge can not be held liable for his decisions or their results, although he may not correctly decide; and, largely upon this principle, the learned judge of the trial court dismissed this suit. The practical effect of applying that rule to such cases would be to annul the act. The legislature doubtless had some purpose in reincorporating the statute in the code, other than the ends sought at the time the act was originally passed, and we shall endeavor to adjudge the present case according to the express terms of the code section. If such a construction can be given to a legislative act as will preserve it, it is always the duty of the courts to adopt that construction, rather than one which will result in its destruction. Conceding that from the very nature of his office a judge should not "be questioned in a civil suit for doing, or for neglecting or for refusing to do a particular official act in the exercise of judicial power," the legislature may have had in mind a supposable case where the writ of habeas corpus might be refused oppressively or corruptly, and where, upon plain proof that the judge had been influenced by personal motives rather than official judgment, the party aggrieved would be permitted to proceed against him personally in a civil suit for the penalty prescribed. From the fact that it is only when it is the duty of the judge to grant the writ that he becomes subject to the penalty on his refusal

to do so, it is clear that the legislature had in mind instances in which applications would be made for the writ when it would not be the duty of the judge to grant it, but on the contrary it would be his duty to refuse it. To such a case the statute was not intended to apply. It evidently does not place upon the judge a mere ministerial duty,—it confers discretion in the examination of the petition (taking the facts stated in the petition to be true), and in the determination of the question whether, upon the petitioner's own showing, he is entitled to the writ, and whether, therefore, it is the judge's *duty* to issue it. Whatever may be the rule in other jurisdictions, it is plain, from the wording of this section of the code, that the writ of habeas corpus is not a matter of absolute right in this State. The suggestion that the words, "the judge whose duty it is to grant said writ," in the statute, are simply a reference to the particular officers who are permitted by law to issue writs of habeas corpus is without force, because if the legislature had intended merely to denominate all the officers who are empowered to issue such writs, the language employed would have been, "any judge who has power to grant said writ," or "any judge who may by law grant said writ," or similar language. The fact that the legislature imposed the penalty only upon a judge whose duty it is to grant the writ necessarily implies that the legislature had in view cases where there would be a refusal because it would not be the duty of the judge in that particular instance to issue the writ.

By the provisions of section 1292 of the Penal Code, the contents of an application for the writ of habeas corpus are prescribed. It was never intended that one to whom, though rightfully detained, confinement had become irksome should involve any judge in needless investigation of the legality of his detention; for it is well settled that the merits of the charge against the applicant are not to be considered in the hearing on the habeas corpus. For this reason, in section 1292 of the Penal Code, it is prescribed that the application for the writ of habeas corpus shall state: "(1) The name or description of the person whose liberty is restrained. (2) The person restraining, the mode of restraint, and the place of detention, as nearly as practicable. (3) The cause or pretense of the restraint; and if under pretext of legal process, a copy of the process, if within the power of the applicant, must be annexed to the petition. (4) A distinct averment of the alleged illegality in the

restraint, or other reason why the writ of habeas corpus is sought. (5) A prayer for the writ of habeas corpus." In the present case the name and description of the person whose liberty was restrained are given, and it is stated, that he is detained in the station-house of the City of Atlanta, by James L. Beavers, chief of police. But the cause or pretense of the restraint, as stated in the fourth, fifth, and sixth paragraphs of the application for habeas corpus attached to the plaintiff's petition, is evasive, and is a patent attempt to conceal the obvious fact, which appears clearly from the petition as a whole, that the petitioner was held under a criminal warrant regularly issued in Meriwether county. The learned counsel for the plaintiff says that this portion of the application should not have been considered in strictness adverse to the pleader, for the reason that the statements of this paragraph of the petition were made not as statements of fact, but merely as the only cause that the petitioner could imagine why he was restrained of his liberty, in view of his inability to set forth definitely the cause or pretense of his restraint. He alleges that the process under which he was held, or a copy of it, was not within his power. This statement is a mere conclusion of the pleader. The third essential in a petition for the writ of habeas corpus is a statement of "the cause or pretense of the restraint." If the restraint is "under pretext of legal process," a copy must be attached for the consideration of the judge; for if the applicant is held under a bench warrant, the petition should be declined (Penal Code, § 1305, par. 3). Unless it is asserted that the petitioner is held without even a pretense of legal authority, it can not be said that it is not within his power to attach a copy of the legal process under pretext of which he is held, unless he states facts which put it beyond his power; such, for instance as that he demanded to be shown a copy of the warrant under which he was arrested and his demand was refused. Since it is well settled that no one is required to submit to arrest under pretense that the arrest is being made upon a warrant, without being shown the warrant upon request, the petitioner in the present case should have alleged that he requested to be shown the warrant and that the request was refused, before the court could assume that it was not within his power to state the pretended process under which he was held. It is to be noted that in the petition for the writ of habeas corpus which was presented to Judge

Hill, it is nowhere averred that the chief of police was proceeding without proper process or warrant. The court was bound to reach the conclusion, from reading the application, that there was a warrant, and the petitioner should therefore have made such allegations as would have shown why the warrant was void or illegal, since it is well settled that upon the hearing of a habeas corpus the merits of the criminal charge are not in issue, but only the legality of the imprisonment. The court could not inquire into the question of venue or jurisdiction, and so it would have been futile to grant the writ of habeas corpus merely because the petitioner alleged that he had never been in Meriwether county, even if it were not well known that offenses can be committed within the jurisdiction of a court whose territorial limits the defendant has never entered in the flesh. *Rose* v. *State,* 4 *Ga. App.* 588 (62 S. E. 117). It is apparent, from the petition for the writ, that there was a warrant. Under section 1305 of the Penal Code, no habeas corpus shall be granted where a person is imprisoned under legal process; and even if there is irregularity in the warrant, this will not furnish ground for discharge. And under section 1308 of the Penal Code, even if there are defects in the warrant or commitment, still, if it appears that there is probable cause for the detention, there will be no discharge on habeas corpus until the prosecutor has had time to institute new proceedings. In *Peebles* v. *Mangum,* 142 *Ga.* 699 (83 S. E. 522), it was held that on the trial of a habeas corpus case the only question to be determined is the legality of the applicant's detention; and it was further held that on the trial of such a case where the applicant was held on a warrant regular on its face, it was not error to refuse to allow the applicant to testify to facts tending to show his innocence of the crime charged against him and to show that the crime could not have been committed in the county where the warrant was issued, and that therefore the court, the judge of which issued the warrant, was without jurisdiction to do so. It is clear, from the ruling of the Supreme Court in *Simmons* v. *Georgia Iron & Coal Co.,* 117 *Ga.* 305, 311 (43 S. E. 780, 61 L. R. A. 739), that the application for habeas corpus is made to the judge as judge, and that the writ does not issue as a matter of right, but only when the application therefor contains allegations which if true would authorize the discharge of the person held in custody. Inferentially at least, this decision

settles the question that in Georgia the writ of habeas corpus is not a "writ of right;" and how can a judge be held liable for properly refusing the writ of habeas corpus, when he is only to issue the writ when the proof of its allegations, if uncontradicted, would authorize the discharge of the person held in custody? It is clear that in the present case the applicant could only have been discharged by holding the warrant against him to be illegal and invalid because he had never been in Meriwether county; for he alleged that the criminal statutes were being used to extort money from him, and he was able to give bond and have any issue between himself and the prosecutor tested in Fulton, rather than in Meriwether county. The suit for the penalty was not helped by the amendment which stated that, "after acquainting himself with the facts set forth in the petition for habeas corpus, he, the said Benjamin H. Hill, acting not in a judicial capacity, voluntarily and wilfully, and without any reason or cause whatever, wrongfully refused to allow the petitioner the writ of habeas corpus." Upon demurrer the judge of the city court, though bound by the facts stated in the pleadings, is not bound by the conclusions of the pleader. The only facts stated in the amendment were that he applied to Judge Hill for the writ of habeas corpus, and that Judge Hill acquainted himself with the facts set forth in the petition and refused the writ. The statement that Judge Hill acted voluntarily, wilfully, and without any cause or reason is a mere conclusion of the pleader, by which the trial court on demurrer was not bound. It is nowhere stated that the judge declined to consider the case on its merits, nor are any facts stated from which the inference can be drawn that the judge, in declining the writ, acted unreasonably, oppressively, or corruptly; if so, a different case would have been presented, and in our view of the case (differing from that of the learned trial judge), the plaintiff might have had the right to go to the jury.

Our construction of the code section on which this suit was based is entirely consistent with the principle that a judge acting in his judicial capacity is not to be held civilly liable after having considered and determined any cause in a judicial capacity, and upon that ground the court properly sustained the demurrer and dismissed the petition. However, the provisions of this section are so framed, in our opinion, as to reach the same ends as are sought

in other jurisdictions having similar statutes, where the failure to issue the writ is not due to the exercise of judicial discretion (although it may be improperly exercised), but is a matter of arbitrary caprice or the result of improper motive.

*Judgment affirmed.*

WADE and BROYLES, JJ., concurring specially. We concur in the affirmance of the judgment, but we are inclined to the view expressed by Mr. Justice Cobb in *Simmons* v. *Georgia Iron & Coal Co.* (supra), where, in discussing the writ of habeas corpus, he says: "Mr. Justice Bleckley, in *Perry* v. *McLendon,* 62 *Ga.* 598, 604, says that the writ should be issued 'provided the petition contains the requisite matter, is in due form, duly authenticated, duly presented, and does not show on its face that the imprisonment— though complained of as illegal—is in fact legal.' It is therefore the duty of the court in every case, before issuing the writ, to inspect the application to see if it contains sufficient averments and is properly verified. If it lacks these essential requisites, he should decline to issue the writ. If it does not, it is 'his duty to grant it,' and for a failure to do so the law imposes a penalty upon him." In other words, we think a judge refuses to grant a writ of habeas corpus at his peril. If the petition which was presented to Judge Hill had shown on its face a case of illegal imprisonment, then, in our opinion, by refusing to grant the writ as prayed for, he would have been subject to the penalty imposed by the Code. The fact that the writ was afterwards issued, on the same petition, by another judge, is immaterial, as, in our judgment, the petition not presenting a prima facie case of illegal imprisonment, the issuance of the writ was not mandatory upon either of the learned judges.