THE PEOPLE OF THE STATE OF NEW YORK ex rel. ARMIN H. MITTLE-MANN, Relator, *v.* MAURICE A. FITZGERALD, Sheriff of the County of Queens, Defendant.

Supreme Court, Special Term, Queens County, November 14, 1941.

*Samuel Rabin* [*Louis Cohen* of counsel], for the relator.

*Austin Mandel*, for the defendant.

*Guggenheimer & Untermeyer* [*Abraham Shamos* of counsel], for Betty Crosney, as administratrix, etc., of Sam Bernard, deceased.

KADIEN, J. The relator, detained in the Queens County Jail, pursuant to an order and warrant of commitment issued out of the Surrogate's Court of New York County, has instituted this habeas corpus proceeding to be discharged from imprisonment.

The following facts appear without contradiction: The relator was one of the executors of the estate of the late Sam Bernard. On or about July 13, 1939, a petition was filed in the Surrogate's Court of New York County to remove the executors, revoke their letters and compel them to account. The relator did not contest the proceeding — he merely appeared by an attorney and sought to resign. The surrogate refused to permit him to do so, and on August 9, 1939, a decree was made as prayed for. An account was filed and an application made for the settlement thereof and for a surcharge against the executors and each of them in the sum of $448,546.39. This was not opposed. On November 22, 1940, a decree was made settling the executors' account and surcharging them with the said sum. Following the service of said decree upon the relator, with notice of entry thereof, a personal demand was made upon him on December 3, 1940, that he pay the moneys directed by the decree to be paid. This he failed to do, and on December 27, 1940, an order to show cause was issued, directing him to show cause why he should not be punished for contempt for his refusal or willful neglect to obey the surcharge decree. When the motion came on to be heard, the relator appeared in person and by an attorney. He filed no papers in opposition. He merely asked for more time in which to raise funds to enable him to make partial restitution. This was granted. No further restitution

having been made, the surrogate rendered a decision granting the motion to punish. (*Matter of Bernard,* N. Y. L. J. Feb. 21, 1941, p. 809.) On February 27, 1941, the relator was personally served with the proposed order for the issuance of a warrant of commitment and a proposed warrant with notice of settlement. On March 4, 1941, the said order and warrant were duly signed. On March 10, 1941, the relator surrendered himself to the custody of the sheriff of Queens county, where he has since been confined. On October 17, 1941, an application was heard by one of the surrogates of New York county to release the relator from custody. This was denied with the following memorandum: " The applicant for release has not satisfied the court that he has accounted for the disposition of all of the property misappropriated by him or has he satisfied the court that with further effort he may not make some restitution to the estate which he defrauded. Accordingly, his application is in all respects denied." (*Matter of Bernard,* N. Y. L. J. Oct. 25, 1941, p. 1214.)

The instant application is predicated upon the claim, as set forth in paragraph 5 of the petition verified November 5, 1941, " that the imprisonment of  *  *  *  petitioner is illegal in that the mandate ordering his commitment is defective in matters and substance required by law rendering it void. That the order of commitment contains no determination and adjudication that  *  *  *  petitioner committed offenses charged and that the misconduct with which  *  *  *  petitioner was charged was calculated to or actually did defeat, impede, impair and prejudice the rights and remedies of the parties. It therefore furnishes no foundation whatsoever for the imprisonment of  *  *  * petitioner."

The attorneys for the estate, opposing this application, contend that the order of commitment under attack fully complies with the requirements of section 770 of the Judiciary Law and that even if it were deemed defective in form, the relator has waived any right to insist upon such alleged defects (1) by failing to object to the form of the proposed order and warrant when they were served upon him before submission to the court, (2) by voluntarily surrendering himself to the sheriff of Queens county, and (3) by making application to be released from imprisonment, thereby affirmatively recognizing the validity and propriety of the commitment papers and of the imprisonment based thereon.

It is stated in 11 Carmody's New York Practice (§ 650, p. 552) that " writs are not intended to review errors or to correct irregularities in the contempt proceeding, but are limited to determining whether the committing court possessed jurisdiction and whether

the commitment is in the form prescribed by statute." (See, also, 10 Carmody's New York Practice, § 146, p. 144.) In the instant case there is no question that the committing court had jurisdiction to punish the relator for contempt. The sole issue presented is whether he was committed under a process void, because it is not in the form prescribed by statute. If it is thus void, then, it seems to me, the detention is illegal. The fact that he had notice of settlement of the proposed order of commitment and warrant, that he recently applied for his release, and that following the issuance of the warrant of commitment he placed himself in the sheriff's custody, does not constitute a waiver of his rights nor render his imprisonment voluntary. " Our constitutional guaranties of liberty are merely empty words unless a person imprisoned or detained against his will may challenge the legality of his imprisonment and detention." (*Hoff* v. *State of New York*, 279 N. Y. 490, 492.) While the purpose of contempt proceedings is to uphold the dignity and power of the court as well as to secure to litigants the rights therein awarded (*Bessette* v. *Conkey Co.*, 194 U. S. 324), " the law is no respecter of persons, and suffers no man, be he guilty or innocent, to be deprived of his liberty, except ' by due process of law; ' and the writ of habeas corpus is as available, even to the guilty, and he whom the popular voice would condemn, as it has proved against commitments by the king in council." (*People ex rel. Tweed* v. *Liscomb*, 60 N. Y. 559, 569.)

Section 770 of the Judiciary Law provides: " If it is determined that the accused has committed the offense charged; and that it was calculated to, or actually did, defeat, impair, impede, or prejudice the rights or remedies of a party to an action or special proceeding, brought in the court, or before the judge or referee; the court, judge, or referee must make a final order accordingly, and directing that he be punished by fine or imprisonment, or both, as the nature of the case requires. A warrant of commitment must issue accordingly. * * *."

The nub of relator's argument is that " nowhere in the order or warrant of commitment under which the relator herein is imprisoned is there an adjudication either that the relator was guilty of a contempt of court or that his acts were calculated to or actually did defeat, impair, impede or prejudice the rights of the parties."

While it is true that these matters are not embodied in the decretal or ordering paragraphs of the order herein directing a warrant of commitment to issue, they are found in the recitals preceding them. The order begins with the recital of the pre-

sentation of a petition asking that the relator be punished for contempt of this court for his failure to comply with the terms of the decree dated November 22, 1940, and entered November 23, 1940, and showing that a certified copy of the said decree, with notice of entry thereof, was duly and personally served on the relator on November 27, 1940, and a personal demand made upon him on December 3, 1940, that he pay the moneys directed therein to be paid. The order then continues: " and it appearing that the said Armin H. Mittlemann has failed and neglected to. comply with the said decree and has not made the payment thereby directed to be made, or any part thereof, and that his failure to make such payment was calculated to and did impede, impair and prejudice the rights of the said petitioner; and this Court having made its order dated December 16, 1940, directing the said Armin H. Mittlemann to show cause on December 27, 1940, why he should not be punished for contempt of this Court for his refusal or wilful neglect to obey the said decree, and the said order to show cause having been duly and personally served on the said Armin H. Mittlemann on December 24, 1940; and the said motion having duly come on to be heard, and the said Armin H. Mittlemann having appeared on the return day in person and by his attorney, * * * and said motion having been argued, and due deliberation having been had." Then follows a recital of the papers before the court. This in turn is followed by three ordering paragraphs. The first grants the motion to punish relator for contempt. The second directs the issuance of a warrant to the sheriff of Queens county, commanding him to commit relator to the common jail of Queens county and keep him in custody until he shall pay the sum of $447,046.39, being the sum of $448,546.39 required to be paid by the decree of the court dated November 22, 1940, less the sum of $1,500 paid by the relator on April 13, 1940, together with the sheriff's fees on the warrant. The third grants the petitioner Betty Crosney leave to apply for any further or other relief that may be required.

In footnote 16 of 11 Carmody's New York Practice (pp. 527, 528) it is stated: " Three provisions are necessary parts of every order adjudging a party guilty of a civil contempt: (1) It must describe the acts which were committed or omitted by the accused, which constituted the contempt, or adjudge that a particular act was done or omitted which amounted to a contempt; (2) it must show what the defendant shall do, or how much he shall pay, if anything, in order to purge himself from contempt; and (3) it must adjudicate that the acts done or omitted impaired the rights of a party to the action. *Agatowski* v. *Novinsky*, 124 Misc. 305; 208 N. Y. S.

514; *Dollard* v. *Koronsky*, 61 Misc. 392; 113 N. Y. S. 793, affirmed without opinion in 133 A. D. 896; 118 N. Y. S. 1103; *Bergin* v. *Deering*, 70 Hun, 381; 53 St. Rep. 894; 24 N. Y. S. 35."

There is no particular language prescribed by the statute in which these provisions must be couched in an order adjudging a party guilty of civil contempt. Nor is it required that these provisions be set forth in any particular place therein or that they must be preceded by decretal phrases. Where a court *specifies* the facts " *appearing* " to it as constituting a contempt of court, as is the case in the order under consideration, that, in my opinion, sufficiently satisfies the requirements of the statute and constitutes an adjudication of the particular circumstances of the relator's offense. Both the order and the warrant herein specify the acts to be performed by the relator, to wit, the payment of a certain sum of money, and direct the sheriff to detain him until he shall have fully paid said sum.

The cases cited by the relator do not in any way affect what has been here stated. It is contended that *Matter of Gordon* v. *Feldberg* (149 App. Div. 246) stands for the proposition that a mere recital in an order cannot be deemed an adjudication within the purview of section 770 of the Judiciary Law. This, upon examination, does not appear to be so. That was an appeal from an order adjudging a judgment debtor guilty of contempt of court because of certain answers given in an examination in supplementary proceedings. The decretal provisions did not contain the adjudications required by section 770 of the Judiciary Law. Such adjudications were contained in the recitals. The court held the order to be fatally defective because it did not contain any adjudication " as to the specific facts which the county judge deemed to be a contempt of court " not because they were in the recitals rather than in the ordering clauses, but because the adjudications in the recitals were not sufficiently detailed to show the nature of the offense committed. Said the court (p. 247): " If the recital in the order which has been quoted above can be deemed to be an adjudication, yet it is not an adjudication of the *particular* circumstances of the relator's offense, as it is but a *general description* of the court's impression of the whole examination of the judgment debtor." (Italics supplied.)

*Eastern Concrete Steel Co.* v. *Bricklayers' & M. P. I. U. Local No. 45* (200 App. Div. 714, 716); *Matter of Mengel* v. *Larkin* (230 id. 783), and *Dailey* v. *Fenton* (47 id. 418) contain language in accord with the holding in *Matter of Gordon* v. *Feldberg* (*supra*) to the effect that the order in a civil contempt proceeding to punish a person for disobedience of an order of the court must " *recite* "

the findings required by section 770 of the Judiciary Law. Nothing there contained requires that such recitals be in decretal form. (See, also, 11 Carmody's New York Practice, § 628, p. 533.)

Accordingly, I hold that since the findings required by the Judiciary Law are contained in the order herein, the fact that they are in the recitals rather than in the ordering clauses does not render the order void so as to require relator's discharge.

The writ is accordingly dismissed.