2001 UT 49

**Richard D. THOMAS, Plaintiff
and Appellant,**

v.

**Judge Leslie A. LEWIS, Defendant
and Appellee.**

No. 990305.

Supreme Court of Utah.

June 12, 2001.

Adrianne Goldsmith, Salt Lake City, for plaintiff.

Mark L. Shurtleff, Att'y Gen., Brent A. Burnett, Asst. Att'y Gen., Salt Lake City, for defendant.

DURRANT, Justice:

¶ 1 Richard D. Thomas appeals the dismissal of his complaint seeking statutory damages against Judge Leslie A. Lewis for her allegedly wrongful and willful refusal of Thomas's extraordinary writ petitions. Thomas filed suit against Judge Lewis pursuant to section 78–35–1 of the Utah Code, requesting that Judge Lewis pay him the fine provided by that statute. The district court dismissed Thomas's complaint. We affirm.

**BACKGROUND**

¶ 2 In 1993, Thomas was arrested and charged with aggravated robbery. Thereafter, he filed a series of petitions for habeas relief. Thomas filed his first petition in February 1995 and then twice amended it. Judge Lewis dismissed that petition on the ground that it was "untimely and inappropriate," because Thomas had "an adequate remedy of direct appeal to the Utah Court of

Appeals or the Utah Supreme Court." [1] Thomas appealed Judge Lewis's dismissal of his first habeas petition and this court summarily affirmed on its own motion, holding that "the issues raised are so insubstantial as not to merit further proceedings or consideration by this court."

¶ 3 Thomas then filed a second petition directly with this court and moved to consolidate it with his then-pending petition for certiorari challenging the underlying conviction.[2] This court denied the motion to consolidate and transferred the second petition to the district court. Judge Lewis ordered Thomas to amend his second petition to provide "a clear, concise statement of the alleged wrong, the facts supporting the claim, and the relief desired." When Thomas failed to amend his second petition Judge Lewis dismissed it without prejudice.

¶ 4 Thomas then filed a third petition, again directly with this court. Without explanation, we directed the district court to reinstate the second petition.[3] Upon remand, Thomas apparently demanded immediate, unconditional release.[4] Judge Lewis denied this requested relief, stating that "petitioner has raised nothing new in his [r]esponse and the Court declines to revisit its prior rulings." Judge Lewis thereafter recused herself, and the petition that we ordered reinstated is still pending in the district court before another judge.

¶ 5 Thomas filed suit pursuant to section 78–35–1 of the Utah Code, which provides for assessment of a fine against a judge who wrongfully refuses to allow a writ of habeas corpus. Thomas cited Judge Lewis's dismissal without prejudice of his second writ of habeas corpus as the basis for his suit.[5] Judge Lewis moved to dismiss. Thomas did not oppose the motion and the court granted it on the ground "that there has never been a determination that the Writ of Habeas Corpus was wrongfully or improperly denied; and that to the extent [Thomas's] [c]omplaint states other claims, those claims are barred by judicial immunity." Thomas appeals the denial of his claims under the habeas penalty statute.

## ANALYSIS

¶ 6 The statute under which Thomas brought his claim provides as follows:

> Any judge, whether acting individually or as a member of a court, who wrongfully and willfully refuses to allow a writ of habeas corpus whenever proper application for the same has been made shall forfeit and pay a sum not exceeding $5,000 to the party thereby aggrieved.

1. Thomas appealed his conviction, arguing that court commissioners lack the authority to issue search warrants. This court agreed, *see State v. Thomas*, 961 P.2d 299, 302–04 (Utah 1998), but remanded to the court of appeals to determine whether the error was reversible. That court ruled in an unpublished memorandum decision that "the admission of the seized evidence was harmless beyond a reasonable doubt." *State v. Thomas*, 1999 UT App 051, 1999 WL 33244831 (Feb. 25, 1999).

2. Thomas erroneously listed the district court case number of his first petition in this second petition. This error has since provoked a significant amount of confusion because this court has perpetuated it as a clerical error in its subsequent orders of remand to the district court. However, because the issues arising out of that error are not material to our decision in this appeal, we do not address them in our brief recitation of the facts.

3. The case number listed in our order actually referred to Thomas's first petition. On appeal, Thomas concedes that this case number designa-

tion erroneously followed his own mistaken designations of the first petition.

4. Judge Lewis's order refers to this demand, but neither party provides a reference to it in the record in this case.

5. In his brief, Thomas characterizes his suit as alleging wrongful denial of both his second and third writs of habeas corpus. Because he concedes that the third writ was directed not to Judge Lewis, but to this court, there is no reason to treat the third writ as a distinct issue. Moreover, the third writ essentially contested the dismissal of the second writ and resulted in an order from this court to reinstate that second writ (albeit inadvertently listed under an incorrect case number). On appeal, Thomas alleges Judge Lewis's dismissal of the second writ and her refusal to grant him the relief requested after our reinstatement of that writ form the basis for this action under the habeas penalty statute, section 78–35–1. We simply address the correctness of the district court's dismissal of that action.

Utah Code Ann. § 78–35–1 (1996). This statute is unique in Utah law. No other common law or statutory provision provides for the assessment of personal liability for wrongful exercise of, or failure to exercise, official judicial powers. It appears to have been rarely invoked and, consequently, this court has rarely addressed it. We therefore believe it useful to briefly describe its historical underpinnings and context as a prelude to our treatment of the issues on appeal.

¶ 7 Utah's statute is similar in form and substance to provisions found in a number of other states. *See, e.g.,* Ark.Code Ann. § 16–112–102(b) (Michie 1987); Col.Rev.Stat. § 13–45–112 (2000); 735 Ill. Comp. Stat. 5/10–106 (1993); Minn.Stat. § 589.07 (2000); Nev.Rev.Stat. Ann. § 34.670 (Michie 1996); N.M. Stat. Ann. § 44–1–8 (Michie 2000); N.C. Gen.Stat. § 17–10 (1999); N.D. Cent. Code § 32–22–37 (1996); S.D. Codified Laws § 21–27–6 (Michie 1987). The historical foundation for these habeas penalty provisions was detailed in *Goetz v. Black,* 256 Mich. 564, 240 N.W. 94 (1932). That case noted as follows:

The right to a writ of habeas corpus is fundamental to personal liberty. Its sources in the common law go back to the earliest struggles for freedom, and precede the provision of the Magna Charta that no "freeman shall be taken or imprisoned . . . unless by the lawful judgment of his peers, or by the law of the land." This pronouncement, however, was insufficient, for certain abuses arose. . . . It was found that frequently persons lawfully discharged on habeas corpus were recommitted to some secret place; officers were imprisoned and terrified to such a degree that they would no longer serve the writ; and there existed a general disregard of the right of habeas

corpus by the Crown. These abuses are recited in the preamble to the statute of 31 [Charles] II, [chap.] 2. This act provided that a return must be made to a writ within three days of its service, prescribed heavy penalties for failure to obey the writ, and prohibited the recommitment of persons discharged on habeas corpus except by proper court order. It also extended the authority to grant habeas corpus to issuance of the writ during vacation time, and provided for a penalty of five hundred pounds to be paid by any authorized court or officer who failed to grant the writ required by the act to be assessed.

*Id.* at 95–96 (citations omitted)(first alteration in original); *see also Oppenheimer v. Ashburn,* 173 Cal.App.2d 624, 343 P.2d 931, 934 (1959).

¶ 8 Utah's version of the penalty statute has undergone very few changes since its earliest incarnations. In 1876, the territorial statute read as follows:

Any judge, whether acting individually or as a member of the court, who wrongfully and wilfully refuses to award such writ, whenever proper application for the same is made, shall forfeit and pay the sum of one thousand dollars, which may be recovered by an action of debt for the use of the Territory; and may be imprisoned for a term not exceeding one year.

1876 Utah Comp. Laws § 1142. The 1898 version removed the incarceration provision and increased the potential fine to five thousand dollars. *See* Utah Rev. Stat. § 1085 (1898). The statute has remained in substantially the same form since that time.

¶ 9 From its inception, the statute was intended to deter improperly motivated judicial denials of a procedural right.[6]

---

**6.** The procedural right vindicated by the statute is not to be confused with the substantive relief requested by the prisoner. When courts grant the relief requested in a writ of habeas corpus, this is often referred to in modern parlance as a "grant" of the writ. However, the common law did not regard the "grant" of a writ of habeas corpus as referring to the relief requested any-more than it did in other contexts involving extraordinary writs. For instance, a "grant" of a writ of certiorari still refers only to a reviewing court's exercise of discretionary jurisdiction to bring the record of a case from a lower court for

the purpose of rendering a decision on the merits. *See, e.g.,* Utah R.App. P. 51. Hence, the statute that now appears in section 78–35–1 was never intended to provide a cause of action based on the mere allegation that a judge had refused to grant the *relief* requested by a prisoner. The issuance of a writ of habeas corpus (under the prevailing nomenclature of the common law) merely meant that sufficient information had been set forth in the petition to persuade the court to issue an order directing the custodial officer to produce the prisoner so that the court

Though significant even by modern standards, five thousand dollars at the turn of the century was a considerably greater measure of relative wealth than it is today. The fact that this sum has remained unchanged for over a hundred years despite substantial fluctuations in the real value of the dollar during that period suggests that the statute is somewhat anachronistic. At the very least, it appears that the provision has simply evaded any serious legislative attention.

¶ 10 Many other states, recognizing the dilemma posed by a statute that arguably impinges upon the most fundamental aspects of judicial discretion, see, e.g., State ex rel. Walker v. Dobson, 135 Mo. 1, 36 S.W. 238, 240 (1896), have abolished habeas penalty provisions or apparently have limited their reach to lesser governmental officers who act in merely ministerial or administrative capacities when complying with court orders relating to writs of habeas corpus. See Oppenheimer, 343 P.2d at 933 (declaring habeas penalty against judges an unconstitutional violation of separation of powers and noting that California statute had been amended to delete all reference to judges); see also Cal.Penal Code § 1505 (Deering 1992) (liability applies to "officer or person to whom a writ of habeas corpus is directed"); D.C.Code Ann. § 16–1904 (1997) (liability applies to "officer or other person to whom a writ of habeas corpus is directed"); Md.Code Ann., Cts. & Jud. Proc. § 2–305(a) (1998) (liability applies to "any officer who neglects or refuses to bring a detained person into court when a writ of habeas corpus commands it"); Mass. Gen. Laws Ann. ch. 248, §§ 27, 30 (West 1988) (liability applies to "whoever refuses or neglects to receive and execute a writ of habeas corpus"); Mo.Rev. Stat. § 532.640 (2000) (liability applies to "any officer or other person, upon whom a writ of habeas corpus shall be duly served, [who] neglect[s] or refuse[s] to obey the same"); N.H.Rev.Stat. Ann. 534:27 (1997) (liability applies to "person to whom a writ of habeas corpus is directed [who] refuses to receive it, or conceals himself or avoids");

Ohio Rev.Code Ann. § 2725.21 (Anderson 2000) (liability applies to "a clerk of court who refuses to issue a writ of habeas corpus, after an allowance of such writ and a demand therefor"); id. § 2725.22 (liability applies to "person to whom a writ of habeas corpus is directed"); S.D. Codified Laws § 21–27–10 (Michie 1987) (liability applies to "any officer, sheriff, jailer, keeper, or other person to whom any writ of habeas corpus is directed");[7] Texas Code Crim. Proc. Ann. art. 11.34 & 11.35 (Vernon 1977)(liability applies to "person charged with the illegal custody of another").

¶ 11 While Utah's habeas penalty statute has remained virtually unchanged since its inception, the statutory, political, and social landscape surrounding it has evolved substantially. Many of the other procedural provisions previously resident in the habeas title of the code have since been moved and consolidated in a separate volume of court rules. The process of arresting and detaining criminal suspects is now subject to numerous judicial and administrative formalities that were not as well-established at the time of the adoption of the habeas penalty provision. Technology has allowed the press and media to expand the reach of their surveillance of governmental abuses. Nonetheless, as anachronistic as it may appear, the Utah legislature has not seen fit to abolish or modify the habeas penalty statute. We must therefore address its interaction and application within the larger statutory framework in existence today.

¶ 12 Thomas asserts that he has sufficiently alleged a wrongful refusal to allow his writ of habeas corpus and that it was therefore error for the district court to grant Judge Lewis's motion to dismiss for failure to state a claim. Judge Lewis responds by offering three arguments supporting the trial court's dismissal: (1) the trial court had no jurisdiction over Thomas's claims because Thomas failed to file a notice of claim under Utah's Governmental Immunity Act; (2) she did not

---

could consider the prisoner's plea for relief. See Ex Parte Sahlberg, 31 Utah 489, 489, 88 P. 616, 616 (1907); see also Falcone v. State, 179 Ariz. 536, 880 P.2d 1082, 1083 (Ariz.Ct.App.1993).

7. South Dakota retains a separate provision relating to judges. See S.D. Codified Laws § 21–27–6 (Michie 1987).

"refuse to allow" Thomas's petition for writ of habeas corpus as that phrase is understood by the statute; and (3) Thomas's claims are barred by res judicata. The trial court granted Judge Lewis's motion to dismiss on the second ground. Judge Lewis concedes that she did not raise the first and third arguments in the trial court. She asserts that her first argument relates to subject matter jurisdiction, which may be raised at any time; and she maintains that we may consider her third argument merely as an alternative ground for affirmance. We find the first argument dispositive and therefore do not reach the others.

■ ¶ 13 The notice of claim provisions of the Governmental Immunity Act are jurisdictional. *See Rushton v. Salt Lake County*, 1999 UT 36, ¶ 18, 977 P.2d 1201. Although not raised in the court below, this issue determines our authority to address the merits of the case and may therefore be raised at any time. *See Barnard v. Wassermann*, 855 P.2d 243, 248 (Utah 1993). Further, as it is a threshold issue, we address the jurisdictional question before treating any other arguments. *See Salt Lake City Corp. v. Tax Comm'n*, 1999 UT 41, ¶ 9, 979 P.2d 346.

■ ¶ 14 In the recent case of *Straley v. Halliday*, 2000 UT App 38, 997 P.2d 338, the Utah Court of Appeals held that actions under section 78–35–1 are barred unless the plaintiff demonstrates compliance with the Immunity Act's notice of claim provisions. *See id.* at ¶¶ 14–16. We agree with the reasoning of that case and therefore hold that the district court lacked jurisdiction to entertain Thomas's claim.

¶ 15 Utah's Governmental Immunity Act dictates comprehensive procedures for filing claims for money or damages against governmental entities or employees. According to the Immunity Act, a " '[c]laim' means any claim or cause of action for money or damages against a governmental entity or against an employee." Utah Code Ann. § 63–30–2(1) (Supp.2000). Section 78–35–1 clearly provides a claim or cause of action for money, and we have previously held that judges are governmental "employees" for purposes of the Immunity Act. *See Spoons v. Lewis*, 1999 UT 82, ¶ 6, 987 P.2d 36.

■ ¶ 16 The notice of claim provision of the Immunity Act reads as follows:

> [a]ny person having a claim for injury against a governmental entity, or against an employee for an act or omission occurring during the performance of the employee's duties, within the scope of employment, or under color of authority shall file a written notice of claim with the entity before maintaining an action, regardless of whether or not the function giving rise to the claim is characterized as governmental.

Utah Code Ann. § 63–30–11(2) (Supp.2000). Thomas concedes that there is no record of his filing a notice of claim complying with the dictates of this section. Hence, to maintain his action, he must demonstrate that the notice of claim provision is inapplicable to actions under section 78–35–1. Accordingly, Thomas argues that the notice of claim provision applies only to those causes of action for which the Immunity Act itself provides a waiver of immunity.

¶ 17 Thomas's contention is not supported by the text of the provision at issue. Although the Immunity Act elsewhere purports to denominate various causes of action for which immunity is waived, the notice of claim provision does not state that it is limited to those causes of action specifically waived by the Immunity Act itself. Indeed, by its terms, the notice of claim provision is global in application. It therefore applies to all actions for any claim it describes unless the statute or law authorizing the specific action at issue expressly, or by necessary implication, indicates otherwise.[8] There is nothing

---

8. In *Jenkins v. Swan*, 675 P.2d 1145 (Utah 1983), we noted that an action for adjustment of property taxes prosecuted under the tax code, which "predates the enactment of the Governmental Immunity Act and which provides a distinct and separate basis for his claim," was not subject to the Immunity Act's notice provisions. *See id.* at 1154. *Jenkins* was primarily predicated on the fact that the tax code contained its own detailed procedures for notice and complaint against tax-assessing authorities. *Jenkins* does not stand for the broad proposition that any statute predating the Immunity Act and explicitly providing for suit against a government entity or its agents falls outside the purview of the Act's notice requirements.

within the text or history of the habeas penalty statute that removes it from the ambit of the notice requirements. The statute itself prescribes no particular procedural form or notice requirements. Hence, the adoption of the notice provision of the Immunity Act did not interfere with the substantive right to bring the action, or otherwise produce a contradiction or ambiguity regarding the method of bringing suit. Rather, the notice provision simply provided a uniformly applicable procedural method of bringing suit.

¶ 18 Thomas also argues that the language in the notice-of-claim provision pertains only to claims "for injury." He reads the "injury" requirement as applying to claims against either the government entity itself or government employees. In other words, where the text describes "a claim for injury against a governmental entity, or against an employee," he reads this to mean "a claim for injury against a governmental entity, or [a claim for injury] against an employee." There is some ambiguity in the Immunity Act regarding the "injury" requirement. Other sections of the Immunity Act are somewhat ambivalent in their use of the term "injury." section 63–30–4(3)(a),[9] which pertains to exclusive remedies rather than notice, appears to apply the "injury" requirement to claims against either the entity or its employees; whereas sections 63–30–12 and 13,[10] which specifically pertain to the time for providing notice, do not mention "injury" at all.

■ ¶ 19 We find it unnecessary to resolve the question of whether the notice-of-claim requirement for suits against governmental employees includes an "injury" requirement. Even if we accept Thomas's interpretation of the statute, the definition of "injury" is broad enough to accommodate actions for money damages awarded to victims of an abuse of judicial discretion. The Immunity Act defines injury as "death, injury to a person, damage to or loss of property, or any other injury that a person may suffer to his person, or estate, that would be actionable if inflicted by a private person or his agent." Utah Code Ann. § 63–30–2(5). The language "any other injury that a person may suffer," in addition to the generalized enumerated categories listed in the definition, indicates an intent to draw a broad net over the multitudinous harms that plaintiffs might allege against government officials. The habeas penalty statute fits within that net. It was designed to prevent judges from corruptly condoning an illegal incarceration. In effect, the statute originated as a legislative exception to common-law judicial immunity for conspiracy to perpetrate false imprisonment, cf. *Maddocks v. Salt Lake City Corp.*, 740 P.2d 1337, 1340 (Utah 1987), which is certainly the type of "injury that would be actionable if inflicted by a private person or his agent." It therefore constitutes an injury for purposes of the Immunity Act notice provision.

¶ 20 Consequently, section 78–35–1, read in conjunction with the notice of claim provision of the Immunity Act, demonstrates that Thomas's action fails for lack of subject matter jurisdiction. The plain language of the

9. That section provides, in pertinent part, as follows:

[a]n action under this chapter against a governmental entity or its employee for an injury caused by an act or omission that occurs during the performance of the employee's duties, within the scope of employment, or under color or of authority is a plaintiff's exclusive remedy. Utah Code Ann. § 63–30–4(3)(a).

10. Those sections provide as follows:

A claim against the state, or against its employee for an act or omission occurring during the performance of the employee's duties, within the scope of employment, or under color of authority, is barred unless notice of claim is filed with the attorney general within one year after the claim arises, or before the expiration of any extension of time granted under Section 63–30–11, regardless of whether or not the function giving rise to the claim is characterized as governmental.
Utah Code Ann. § 63–30–12;

A claim against a political subdivision, or against its employee for an act or omission occurring during the performance of the employee's duties, within the scope of employment, or under color of authority, is barred unless notice of claim is filed with the governing body of the political subdivision according to the requirements of Section 63–30–11 within one year after the claim arises, or before the expiration of any extension of time granted under Section 63–30–11, regardless of whether or not the function giving rise to the claim is characterized as governmental.
Utah Code Ann. § 63–30–13.

habeas penalty provision requires Thomas to allege a judicial "act or omission." Specifically, he must allege that Judge Lewis wrongfully exercised her judicial authority in refusing to allow a writ of habeas corpus.[11] By definition, such an act or omission necessarily occurs "during the performance of [Judge Lewis's] duties" as a judicial officer, "within the scope of [Judge Lewis's] employment," and "under color of [Judge Lewis's] authority." *See* Utah Code Ann. § 63–30–11(2). Therefore, the notice of claim provision applies to Thomas's complaint and his failure to file a notice of claim deprives this court of jurisdiction.

¶ 21 We affirm the district court's dismissal of Thomas's complaint.

¶ 22 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURHAM, and Justice WILKINS concur in Justice DURRANT's opinion.

---

11.  Under the Immunity Act, he must additionally allege fraud or malice.  *See* Utah Code Ann. § 63–30–4(3); *Straley,* 2000 UT App 38, ¶¶ 12–13, 997 P.2d 338.