**2024 UT App 57**

---

## THE UTAH COURT OF APPEALS

———

E.S., AND M.S., ON BEHALF OF MINORS G.S. AND M.S.,
Appellants,
*v.*
UNIVERSITY OF UTAH MEDICAL CENTER,
Appellee.

———

Opinion
No. 20230197-CA
Filed April 18, 2024

———

Third District Court, Salt Lake Department
The Honorable Todd M. Shaughnessy
No. 220904853

———

Alan S. Mouritsen and Whitney E. McKiddy,
Attorneys for Appellants

Sean D. Reyes and Peggy E. Stone,
Attorneys for Appellee

———

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and JOHN D. LUTHY concurred.

———

TENNEY, Judge:

¶1 Plaintiffs sued the University of Utah Medical Center (the University), alleging that the University was negligent in hiring and failing to supervise a sex offender who was working as a nurse (Nurse) in the University's Neonatal Intensive Care Unit (NICU).[1] The district court dismissed the suit, ruling that

---

1. As explained below, Plaintiffs are three sisters, each of whom alleges that Nurse sexually abused her many years after the two older sisters were patients in the University's NICU. Two of the sisters are still minors and are represented by their father in this suit, while the oldest sister is now an adult. For ease of reference,

(continued…)

Plaintiffs could not establish proximate cause for any of their claims. Plaintiffs appealed that ruling. While briefing was underway, the University filed a motion for summary disposition, arguing that Plaintiffs had failed to properly deliver a notice of claim to the University before filing suit as required by the Utah Governmental Immunity Act (the Immunity Act). Though we denied the motion for summary disposition, we deferred an ultimate ruling on this issue until full briefing had concluded. With the benefit of that briefing and subsequent argument, we now hold that Plaintiffs failed to deliver a notice of claim to the University and that this failure deprives the courts of jurisdiction to consider their lawsuit. We accordingly affirm the district court's dismissal of the suit for that reason.

BACKGROUND[2]

¶2 Around 2001, the University hired Nurse to work in its NICU. Nurse had been previously convicted for sodomy on a child, but the University failed to conduct a "reasonable" background check and did not discover Nurse's conviction. From late December 2002 through early 2003, Nurse assisted in the care of E.S. after she was born prematurely. In 2004, Nurse assisted in the care of M.S. (E.S.'s sister) after she was admitted for health problems of her own.

¶3 Less than a year after M.S.'s hospital stay, Nurse contacted the girls' parents under the guise of checking up on M.S. Nurse

---

we'll refer to them collectively as "Plaintiffs" throughout this opinion.

2. "On appeal from a motion to dismiss, we review the facts only as they are alleged in the complaint. We accept the factual allegations as true and draw all reasonable inferences from those facts in a light most favorable to the plaintiff." *Koerber v. Mismash*, 2013 UT App 266, ¶ 3, 315 P.3d 1053 (quotation simplified).

invited the parents to dinner, after which Nurse and the family developed a decade-long friendship. Sometime between 2014 and 2015, Nurse convinced the girls' father to allow Nurse to spend unsupervised time with the two girls and their sister (G.S.). During subsequent unsupervised time with the girls, Nurse sexually assaulted each of them and "took lewd and explicit images of them."

¶4  After the abuse came to light, Plaintiffs filed a "Notice of Intent to Commence Action" (the notice of intent). They served it by certified mail on a Senior Vice President of the University of Utah, an "Administrator" at the Medical Center (which, again, we're referring to as the University), and with the Division of Occupational and Professional Licensing (DOPL) of the Utah Department of Commerce. The notice of intent was largely comprised of what later became Plaintiffs' civil complaint, with a preface noting that it was being filed in compliance with the Utah Medical Malpractice Act (the Malpractice Act). *See* Utah Code § 78B-3-412(1)(a) (requiring plaintiffs suing for medical malpractice to give "the prospective defendant" 90 days' notice of a lawsuit).

¶5  A couple of weeks later, the attorney general's office appeared as counsel for the University. Several months after that, Plaintiffs filed a civil complaint against the University, alleging that the University had negligently hired and supervised Nurse, thereby enabling him to gain access to Plaintiffs and then groom them for sexual abuse.

¶6  The University moved to dismiss the suit under rule 12(b)(6) of the Utah Rules of Civil Procedure. The University pointed to the large time gap between Nurse's interactions with Plaintiffs at the University and the later abuse, as well as the many intervening circumstances that occurred in the interim (such as the family befriending Nurse over the course of a decade). In the University's view, Plaintiffs could not establish proximate cause

because it was "entirely unforeseeable" that the University's alleged misconduct would lead to this abuse.[3] Plaintiffs opposed the motion, arguing that the time gap was not enough to prevent them from establishing proximate cause and that their pleadings had at least raised a factual question as to whether it was reasonably foreseeable that a person convicted of a child sex offense would attempt to "groom" future victims through a job that brought him into close contact with children. The district court granted the University's motion, however, agreeing with the University that Plaintiffs could not establish proximate cause in these circumstances as a matter of law.

¶7 Plaintiffs appealed. While briefing was underway, the University filed a motion for summary disposition. There, the University argued for the first time that Plaintiffs had failed to comply with the notice of claim requirements of the Immunity Act. According to the University, this failure deprived the courts of subject matter jurisdiction over Plaintiffs' suit. After receiving an opposition from Plaintiffs and a reply from the University on the jurisdictional question, we denied the University's motion for summary disposition, but we deferred an ultimate ruling on the issue "pending full briefing and plenary consideration" by the panel. The parties addressed the jurisdictional issue in their merits briefs and again at oral argument.

## ISSUES AND STANDARDS OF REVIEW

¶8 Plaintiffs challenge the district court's decision granting the University's motion to dismiss on several grounds. We generally "review a decision granting a motion to dismiss for correctness, granting no deference to the decision of the district

---

3. In its motion to dismiss, the University also argued that it enjoyed immunity to claims relating to "mental anguish" under the Immunity Act. The district court did not rule on this basis, however, and we have no occasion to address it.

court." *Amundsen v. University of Utah*, 2019 UT 49, ¶ 20, 448 P.3d 1224 (quotation simplified). But because we conclude that the courts lack subject matter jurisdiction, we do not reach the arguments raised by Plaintiffs. The question of whether we have jurisdiction "presents a question of law, which this court reviews under a correction of error standard." *In re adoption of Baby E.Z.*, 2011 UT 38, ¶ 10, 266 P.3d 702 (quotation simplified).

ANALYSIS

¶9 "Our law has long embraced a general principle of governmental immunity." *Craig v. Provo City*, 2016 UT 40, ¶ 14, 389 P.3d 423. But the government retains the ability to waive its immunity when it so chooses. In Utah, it does so through the Immunity Act, which is a "comprehensive" statute that "expressly identifies the actions or claims for which immunity is waived" and "prescribes the proper timing and means by which a claim must be asserted." *Id.* ¶ 15 (quotation simplified); *see also* Utah Code § 63G-7-101(2)(b) (stating that the Immunity Act is a "comprehensive" statute that "governs all claims against governmental entities or against their employees or agents arising out of the performance of the employee's duties, within the scope of employment, or under color of authority"). Because the waivers set forth in the Immunity Act relinquish immunity that the government would otherwise enjoy, plaintiffs who seek to rely on those waivers must strictly comply with the Immunity Act's requirements. *See Hall v. Utah State Dep't of Corr.*, 2001 UT 34, ¶ 23, 24 P.3d 958 (holding that "where the government grants statutory rights of action against itself, any conditions placed on those rights must be followed precisely" and the statute's requirements must be "strictly followed").

¶10 It's well settled that the Immunity Act's requirements implicate subject matter jurisdiction. *Amundsen v. University of Utah*, 2019 UT 49, ¶ 19, 448 P.3d 1224 ("Compliance with the [Immunity Act] is a prerequisite to vesting a district court with

subject matter jurisdiction over claims against governmental entities." (quotation simplified)); *Greene v. Utah Transit Auth.*, 2001 UT 109, ¶ 16, 37 P.3d 1156 ("Compliance with the Immunity Act is necessary to confer subject matter jurisdiction upon a trial court to hear claims against governmental entities."); *Hall*, 2001 UT 34, ¶ 23 ("We have consistently and uniformly held that suit may not be brought against the state or its subdivisions unless the requirements of the . . . Immunity Act are strictly followed."). Subject matter jurisdiction may "be raised at any time," including, as here, for the first time on appeal. *Thomas v. Lewis*, 2001 UT 49, ¶ 13, 26 P.3d 217. And courts cannot reach the merits of cases over which they lack subject matter jurisdiction. *See, e.g.*, *Johnson v. Johnson*, 2010 UT 28, ¶ 8, 234 P.3d 1100 ("Subject matter jurisdiction is the authority of the court to decide [a] case." (quotation simplified)). As a result, our supreme court has "repeatedly denied recourse to parties that have even slightly diverged from the exactness required by the Immunity Act." *Wheeler v. McPherson*, 2002 UT 16, ¶ 12, 40 P.3d 632. If a plaintiff fails to comply with the requirements set forth in the Immunity Act, the court must dismiss the complaint. *See Greene*, 2001 UT 109, ¶ 16.

¶11 One of those requirements is that "[a]ny person having a claim against a governmental entity . . . shall file a written notice of claim with the entity before maintaining an action." Utah Code § 63G-7-401(2). The notice of claim must include "a brief statement of the facts," the "nature of the claim," and a statement of any "known" damages. *Id*. § 63G-7-401(3)(a)(i)–(iii). The notice must be "signed by the person making the claim or that person's agent, attorney, parent, or legal guardian." *Id*. § 63G-7-401(3)(b)(i). And of note for this appeal, the notice of claim must be "delivered, transmitted, or sent" to the proper governmental entity.[4]

---

4. We have no need to determine whether there's any conceptual distinction between the terms "delivered, transmitted, and sent"

(continued…)

*Id* § 63G-7-401(3)(b)(ii) (identifying in detail who the recipient must be for a range of governmental entities). As relevant here, the notice of claim must be delivered to "the attorney general, when the claim is against the state." *Id*. § 63G-7-401(3)(b)(ii)(E). The Immunity Act then defines "State" to include "each office, department, . . . *hospital*, college, *university, . . .* or other instrumentality of the state." *Id*. § 63G-7-1-102(10) (emphases added). Finally, the statute provides something of a catch-all provision, also allowing delivery upon "the agent authorized by a governmental entity to receive the notice of claim" under section 63G-7-401(5)(e). *Id*. § 63G-7-401(3)(b)(ii)(G).

¶12 The notice of claim serves two important purposes: first, it alerts the governmental entity to the alleged facts at issue; and second, it provides the governmental entity with "an opportunity to correct the condition that caused the injury, evaluate the claim, and perhaps settle the matter without the expense of litigation." *Rushton v. Salt Lake County*, 1999 UT 36, ¶ 20, 977 P.2d 1201 (quotation simplified). To aid in these purposes, the statute imposes a 60-day waiting period after the party files the notice of claim, thereby giving the governmental entity a chance to respond before the case proceeds to litigation. *See* Utah Code § 63G-7-403(2)(a)(ii); *see also McGraw v. University of Utah*, 2019 UT App 144, ¶ 12, 449 P.3d 943.

¶13 The Immunity Act "demands strict compliance," and this demand extends to the requirements relating to the notice of claim. *Wheeler*, 2002 UT 16, ¶ 13. In *Canfield v. Layton City*, for example, our supreme court held that it "is well established that failure to comply precisely with the notice requirement, where it applies, deprives the court of subject matter jurisdiction." 2005 UT 60, ¶ 12, 122 P.3d 622. And in *Thomas v. Lewis*, the court similarly held that the "notice of claim provisions" of the Immunity Act are

---

within this provision. For ease of reference, we'll refer to it as a "delivery" requirement through the remainder of this opinion.

"jurisdictional" and "determine[]" a court's "authority to address the merits of the case." 2001 UT 49, ¶ 13; *accord Rushton*, 1999 UT 36, ¶ 18 (holding that the "[f]ailure to file such notice deprives the court of subject matter jurisdiction").

¶14   Given the level of specificity in this scheme, it is not enough for a party to deliver notice somewhere within the subdivision responsible for the alleged misconduct. *See Greene*, 2001 UT 109, ¶ 14 (explaining that the amendment to the statute that identified who a notice must be delivered to "reinforce[d] the rule of strict compliance"). In this sense, "[a]ctual notice" to the governmental entity in question "does not cure a party's failure to meet these requirements." *Rushton*, 1999 UT 36, ¶ 19. Instead, Utah courts have frequently dismissed suits for failure to deliver the notice of claim to the proper governmental entity. *See, e.g.*, *Wheeler*, 2002 UT 16, ¶¶ 15–16 (holding that a claim was barred where notice was filed with the county commissioners and an insurance carrier rather than with the county clerk); *Greene*, 2001 UT 109, ¶¶ 5, 17 (holding that a claim was barred where notice was delivered to Utah Transit Authority's claims adjustor rather than the president or secretary of its board); *McGraw*, 2019 UT App 144, ¶¶ 17–18 (holding that a claim was barred where a document that might otherwise have qualified as a valid notice was delivered "to the University's General Counsel and not" the attorney general or the attorney general's "authorized agent").

¶15   In an apparent attempt to facilitate compliance with this requirement, the Immunity Act also requires governmental entities to "file a statement with the Division of Corporations and Commercial Code with the Department of Commerce" (the Division) listing the "office or agent designated to receive a notice of claim," along with certain contact information set forth in Utah Code section 63G-7-401(5)(a). The Division, in turn, is charged with "maintain[ing] an index of the statements," *id.* § 63G-7-401(6)(a)—which we've sometimes referred to as a "database," *see Suazo v. Salt Lake City Corp.*, 2007 UT App 282, ¶ 2, 168 P.3d 340;

*McTee v. Weber Center Condo. Ass'n*, 2016 UT App 134, ¶ 8 n.11, 379 P.3d 41—and the Division is tasked with making that index or database accessible to the public. Utah Code § 63G-7-401(6)(b).[5]

¶16    The Immunity Act also sets forth a few exceptions under which a court may still have jurisdiction even when a party fails to strictly comply with the delivery requirement. One of them relates to the database requirement and is properly described as a governmental fault exception. Under the terms of this exception, a "governmental entity may not challenge the validity of a notice of claim on the grounds that it was not directed and delivered to the proper office or agent if the error is caused by the governmental entity's failure to file or update" its statement with the Division. *Id*. § 63G-7-401(7).[6]

¶17    In *Suazo v. Salt Lake City Corporation*, we discussed and applied the governmental fault exception. 2007 UT App 282, 168 P.3d 340. In that case, Salt Lake City had changed its designated recipient in the Division's database three days before a potential plaintiff filed his notice of claim. *Id*. ¶¶ 2–3. In an affidavit, the plaintiff's counsel subsequently averred that he had obtained the older, now-incorrect information from the database, although he did not specify when exactly he had done so. *Id*. ¶¶ 2, 11. But even accounting for that, we still held that the governmental fault exception did not apply because nothing in the record "suggest[ed] that the City's failure to update the database" until three days before the incorrect delivery "*caused*" the plaintiff "to improperly serve his notice of claim" on the outdated recipient. *Id*. ¶ 10 (emphasis in original); *see* Utah Code § 63G-7-401(7)

---

5. For simplicity, we'll refer to it as "the database" moving forward.

6. Utah Code sections 63G-7-401(8)(a) and (b) set forth additional exceptions, but we need not address them because Plaintiffs have not argued that either applies in this case.

(stating that the failure to properly deliver the notice of claim must be "caused by" the failure in the database). We thus stressed that when a plaintiff seeks to rely on the governmental fault exception, "the burden would certainly be on the [plaintiff] to establish when he or she consulted the database in relation to the amendment of the database and the improper service. This information would be necessary to evaluate the reasonableness of the [plaintiff's] reliance and determine causation." *Suazo*, 2007 UT App 282, ¶ 12.

¶18 Against this backdrop, we turn to the questions of whether (i) Plaintiffs delivered a statute-compliant notice of claim to the proper governmental entity here, and, if not, (ii) whether the noted statutory exception applies. We agree with the University that the answer to both questions is no.[7]

¶19 First, Plaintiffs failed to deliver a statute-compliant notice of claim to the proper governmental entity. In arguing that they did, Plaintiffs assert that although their notice of intent only invoked the Malpractice Act (as opposed to the Immunity Act), it satisfied both the Malpractice Act and the Immunity Act because it set forth the relevant facts, the nature of the claim asserted, and the known damages. *See* Utah Code § 63G-7-401(3)(a).

---

7. In their brief, the Plaintiffs initially argued that compliance with the delivery rule for a notice of claim shouldn't be regarded as a prerequisite to subject matter jurisdiction, but that it should more correctly be viewed as a non-jurisdictional claims-processing rule. But Plaintiffs also recognized that precedent from our supreme court holds otherwise, and they correctly acknowledged this again at oral argument. Plaintiffs' assertion of this argument seems to have been intended to preserve it for potential review on certiorari. We thus note that Plaintiffs made this argument and that, under controlling authority, we reject it.

¶20    But these relate to the required content of the notice. As discussed above, the Immunity Act also requires a plaintiff to deliver a notice of claim to the proper governmental entity or its designated agent. *See id*. § 63G-7-401(3)(b)(ii). And as also discussed, a party who seeks to sue the University and its hospital must deliver the notice of claim to the attorney general. *See id*. § 63G-7-401(3)(b)(ii)(E). Plaintiffs did not. Instead, their notice of intent was only delivered to a Senior Vice President of the University of Utah, an Administrator of its Medical Center, and DOPL. Because Plaintiffs' notice of *intent* was not delivered to the proper party under the Immunity Act, it could not qualify as a strictly compliant notice of *claim* under the Immunity Act.

¶21    Second, Plaintiffs have not persuaded us that the noted exception applies. Plaintiffs invoke only the governmental fault exception described above, and in their arguments and through a supporting affidavit from their trial counsel, they point to several problems with the Division's database. In that affidavit, trial counsel claimed that when she visited the Division's website on June 27, 2023, the database was accessible only through a search bar. Trial counsel also claimed that she tried multiple search terms—including "University," "University of Utah," "Medical Center," and "Hospital"—and received no results pertaining to the University generally or to its Medical Center. She claimed that she also searched "Attorney General" and received no results. Finally, she said that when she searched for "State," the database returned a result that named an "Administrative Assistant" with an "agutah.gov" email address as the recipient, but that it did not expressly connect the entry to the attorney general or an attorney within the attorney general's office.

¶22    Trial counsel's uncontested assertions about the apparent gaps in this database for plaintiffs who intend to sue the University provide us with some cause for concern. But this concern is not enough to allow us to apply the governmental fault exception in Plaintiffs' favor in this case. This is so because

Plaintiffs have not carried their burden of showing that any defects in the database "*caused*" them "to improperly serve [their] notice of claim" on the incorrect party. *Suazo*, 2007 UT App 282, ¶ 10 (emphasis in original). As noted, we held in *Suazo* that to satisfy this burden, a plaintiff must establish when he or she "consulted the database in relation to . . . the improper service," explaining that this "information would be necessary to evaluate the reasonableness of the claimant's reliance and determine causation."[8] *Id*. ¶ 12.

¶23 We have no such evidence here. Plaintiffs' notice of intent was delivered to the wrong governmental entities on December 16, 2021. But the affidavit from counsel describes the results of a search that was conducted on June 27, 2023, which was 18 months after that improper delivery. We have no information before us

---

8. The delivery failure in *Suazo* was caused by an amendment to the database that occurred shortly before the delivery of the notice. And it's in that context that we required the claimant to establish when he or she consulted the database. But we have no difficulty concluding here that the same requirement applies when a claimant claims that some other database defect (such as a lack of information about the governmental entity's agent or address) caused the failure to properly deliver the notice of claim. This is so because the statute at issue turns on whether the improper delivery was "caused by the governmental entity's failure to file or update" its statement with the Division. Utah Code § 63G-7-401(7). The government itself would be in no position to produce proof about whether the plaintiff's failure was "caused by" any such defect. Because of this, as in the *Suazo* scenario, it would be incumbent on the plaintiff to provide information about when the plaintiff searched the database in relation to the improper delivery, thereby allowing the court to "evaluate the reasonableness of the [plaintiff's] reliance and determine causation." *Suazo v. Salt Lake City Corporation*, 2007 UT App 282, ¶ 12, 168 P.3d 340.

demonstrating that Plaintiffs searched the database before filing their notice of intent in December 2021, much less information showing that any particular defects that existed at that time affirmatively caused them to deliver their notice to the wrong governmental entities. Without such information, we have no basis for applying the governmental fault exception in Plaintiffs' favor.

¶24 We're sensitive to Plaintiffs' suggestion that a dismissal on this basis may seem to be the product of a technicality. As Plaintiffs point out, their notice of intent did make it into the hands of an assistant attorney general, and the attorney general's office then capably represented the University's interests at both the district court and on appeal. But we're not free to disregard the plain terms of the controlling statute or the settled cases interpreting it. And "where a right is purely statutory and is granted upon conditions, one who seeks to enforce the right must by allegation and proof bring himself within the conditions." *Hamilton v. Salt Lake City*, 106 P.2d 1028, 1030 (Utah 1940) (quotation simplified). Here, the statute stated that to sue the University, Plaintiffs were required to first deliver a notice of claim to the attorney general or its designated agent. Because Plaintiffs did not, the courts lack jurisdiction to consider their suit. For this reason, the suit must be dismissed.

CONCLUSION

¶25 The district court dismissed Plaintiffs' suit based on the court's conclusion that Plaintiffs could not establish proximate cause. Because we conclude that Plaintiffs failed to strictly comply with the notice of claim provision of the Immunity Act, however, we conclude that the courts lack jurisdiction to consider the suit. We therefore affirm the dismissal on this basis.

———————