FRANCIS L. HOFF, Appellant, *v.* STATE OF NEW YORK,
Respondent.
(Claim No. 24406.)

Submitted December 2, 1938; decided January 10, 1939.

*A. Stanley Copeland* for appellant. Claimant had a constitutional right, fortified by statute, to petition for a writ of habeas corpus. (State Const. art. 1, § 4; Cons. Laws, ch. 27, § 204.) The act complained of was an act of misfeasance and a tort, for which the State is responsible. (Court of Claims Act, § 12-a.)

*John J. Bennett, Jr., Attorney-General (Leon M. Layden, Henry Epstein* and *Paul Muscarella* of counsel), for respondent. Even if the State were guilty of negligence in forwarding the petition to claimant's wife, the claimant has failed to prove that he sustained any damages by reason thereof or that he was illegally detained. (*Carter* v. *Beckwith,* 128 N. Y. 312; 22 C. J. Evidence, § 29.)

LEHMAN, J. The claimant on March 6, 1936, while confined to Tonawanda State Hospital under an order of the court, signed and verified a petition for a writ of habeas corpus and placed it in a stamped envelope addressed to his attorney, A. Stanley Copeland. The claimant had been adjudged insane. It is the duty of an employee of the hospital, acting under the direction of the superintendent, to examine all the mail of patients confined in the hospital before the mail is sent out. The claimant, believing that he was sane, had written to many men in public life asking their assistance. The claimant's wife had been annoyed by inquiries from persons who have received such letters. She requested that all letters written by the claimant should be sent to her. The superintendent of the hospital acceded to her request and, by his directions, all mail, including the letter addressed to the claimant's attorney and containing the petition for the writ of habeas corpus, was forwarded to claimant's wife, who suppressed the letter. On March

25th Copeland presented a new petition verified by himself to the County Judge of Erie county.

The writ was made returnable on March 30th before a jury. On April 2, 1936, the claimant was discharged from custody after the jury had determined that he was sane. Our constitutional guarantees of liberty are merely empty words unless a person imprisoned or detained against his will may challenge the legality of his imprisonment and detention. The writ of habeas corpus is the process devised centuries ago for the protection of free men. It has been cherished by generations of free men who had learned by experience that it furnished the only reliable protection of their freedom. The right of persons, deprived of liberty, to challenge in the courts the legality of their detention is safeguarded by the Constitution of the United States and by the Constitution of the State. The Legislature could not deprive any person within the State of the privilege of a writ of habeas corpus. (N. Y. Const. art. 1, § 4.) The superintendent of the hospital by diverting to claimant's wife the letter and petition for a writ of habeas corpus obstructed the claimant's right to test the legality of his imprisonment. Doubtless the superintendent acted in the honest belief that the claimant was insane. Nevertheless, his act delayed for a time a test of the claimant's sanity which, when made, resulted in his discharge.

We can find no basis for any claim that the superintendent's action was justifiable. The purpose of the claimant's letter was disclosed to him and the purpose of the direction given by the superintendent to send all mail to claimant's wife could only have been to give the wife the opportunity to suppress any communications from the claimant which in her opinion should not reach their intended destination.

The right of the superintendent in the exercise of a reasonable discretion to censor the ordinary mail written by a patient who has been adjudged insane is not

challenged. The question is whether the superintendent of a State hospital for the insane may in the exercise of his discretion obstruct or delay a challenge of the legality of detention by a patient held under a court order. To that question one answer is clearly dictated. The State cannot under the Constitution withhold the privilege of the writ of habeas corpus. It has not attempted to do so. On the contrary, the Legislature has provided that " any one in custody as an insane person, * * * is entitled to a writ of habeas corpus, upon a proper application made by him or some relative or friend in his behalf." (Mental Hygiene Law [Cons. Laws, ch. 27], § 204.) An officer of the State who detains a man under command of the State may not by indirection accomplish what the Constitution forbids to the State. He may not lawfully withhold from a person so detained the opportunity to apply for a writ of habeas corpus. An interesting discussion upon an analogous question is to be found in *People ex rel. Jacobs* v. *Worthing* (167 Misc. Rep. 702).

The Legislature in the Civil Practice Act has made clear that under no circumstances may the grant of the writ of habeas corpus, or a hearing upon the writ when granted, be refused or delayed. A judge authorized to grant the writ " must grant it *without delay* " whenever a petition therefor is presented and for violation of that command a judge forfeits to the prisoner $1,000. (§ 1235.) It may not be disobeyed for any defect of form. It may be served even on a Sunday (§ 1242) and " the court or judge before which or whom the prisoner is brought by virtue of a writ of habeas corpus * * * must *examine, immediately after the return of the writ*, into the facts alleged in the return and into the cause of the imprisonment or restraint of the prisoner." (§ 1251.)

The act of the superintendent was an act of misfeasance, and the State may be held liable for any damages caused by that act. (*Martindale* v. *State*, 269 N. Y. 554.) In this case the damages were probably very small but there

can be no doubt that the claimant's challenge, ultimately successful, was delayed for approximately two weeks. There is finding " that the mental condition of claimant was substantially the same on March 6th, 1936, as it was upon March 30th, 1936, when brought into Erie County Court and on April 2nd, 1936, when discharged from custody." The determination of the jury on April 2nd is a conclusive adjudication that at that time the claimant was sane. We must assume that if his condition was the same earlier, a trial, whether before judge or jury, would have resulted in the same way, and there is evidence, which has not been substantially challenged, which supports the finding of the court.

The presumption of continuance of insanity " as to all dealings after the inquisition until it has been superseded " (*Carter* v. *Beckwith*, 128 N. Y. 312, 316) applies only where the question concerns the validity of " dealings " and where there has been an " inquisition," that is, a judicial determination that a committee of the alleged insane person should be appointed. It has no application where as in this case there has been only an order of commitment by the County Court to a State hospital. (*Finch* v. *Goldstein*, 245 N. Y. 300.)

The judgments of the Appellate Division and of the Court of Claims should be reversed and a new trial granted, with costs to abide the event.

CRANE, Ch. J., O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Judgments reversed, etc.