Poltorak v Clarke (2025 NY Slip Op 04496)

Poltorak v Clarke

2025 NY Slip Op 04496

Decided on July 30, 2025

Appellate Division, Second Department

Golia, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 30, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
BARRY E. WARHIT
LILLIAN WAN
DONNA-MARIE E. GOLIA, JJ.

2020-06522
 (Index No. 2718/17)

[*1]Bella Poltorak, appellant,
v
Sharon A. B. Clarke, etc., respondent.

APPEAL by the plaintiff from an order and judgment (one paper) of the Supreme Court (Wayne P. Saitta, J.), dated July 8, 2020, and entered in Kings County. The order and judgment, insofar as appealed from, denied the plaintiff's motion for summary judgment on the cause of action for the imposition of a $1,000 forfeiture against the defendant pursuant to CPLR 7003(c), granted those branches of the defendant's cross-motion which were pursuant to CPLR 3211(a)(7) to dismiss the amended complaint and, in effect, for a judgment declaring that CPLR 7003(c) violates the Compensation Clause of the New York State Constitution, and dismissed the amended complaint.

Jill M. Zuccardy (New York Legal Assistance Group, New York, NY [Beth E. Goldman and Amanda M. Beltz]. of counsel), for appellant.
Holwell Shuster & Goldberg LLP, New York, NY (Brian T. Goldman, James McGuire, and Vincent Levy of counsel), for respondent.
Arnold & Porter Kaye Scholer LLP, New York, NY (Rosalyn Richter and Mitchell Stern of counsel), for amici curiae Susan Phillips Read, Robert S. Smith, Richard T. Andrias, Marcy L. Kahn, Bernard J. Malone, Jr., and Peter B. Skelos.

GOLIA, J.

OPINION & ORDER
I. Introduction
In a case of first impression in this Court, we are asked to determine whether section 7003(c) of the Civil Practice Law and Rules, which provides that a judge who violates CPLR 7003(a) in refusing to issue a writ of habeas corpus pursuant to CPLR 7003(a) "forfeits to the person detained one thousand dollars," is unconstitutional. Specifically, we consider whether CPLR 7003(c) violates the Compensation Clause of the New York State Constitution, as well as the separation of powers doctrine, the tenet upon which our democracy rests. For the foregoing reasons, we answer these questions in the affirmative and hold that CPLR 7003(c) is unconstitutional.
II. Factual and Procedural History
The factual and procedural history of this action and the related Family Court proceedings is extensive and, as relevant to the issues on this appeal, begins in May 2017, when the plaintiff's husband (hereinafter the father) commenced a proceeding in Family Court for a determination of custody and parental access with respect to the plaintiff's and the father's three children. At the time, there was no custody order, and the children were residing with the plaintiff in Connecticut.
In September 2017, the defendant, a judge presiding in the Family Court, after a hearing, issued a writ of habeas corpus dated September 19, 2017 (hereinafter the September 2017 [*2]writ), directing the plaintiff to return the eldest child to the father. Thereafter, the defendant issued a temporary order of custody and parental access dated September 20, 2017 (hereinafter the September 2017 temporary order of custody and parental access, and together with the September 2017 writ, the September 2017 orders), among other things, granting the father temporary custody of the eldest child and the plaintiff temporary custody of the plaintiff's and the father's two other children.
Thereafter, the plaintiff moved in this Court, inter alia, for leave to appeal from the September 2017 orders and to stay enforcement of the September 2017 writ and stated portions of the September 2017 temporary order of custody and parental access. On September 25, 2017, this Court granted a temporary restraining order (hereinafter the TRO), among other things, staying enforcement of the September 2017 orders, and assigned a return date to the plaintiff's motion for a determination of the issues presented. Despite the TRO, the father continued to detain the eldest child. The day after this Court issued the TRO, but before this Court decided the pending motion, the plaintiff filed a petition in the Family Court for a writ of habeas corpus for the return of the eldest child to her based upon the TRO.
The plaintiff and the father appeared before the defendant on October 3, 2017. During the proceeding, the defendant initially stated that she was issuing the writ of habeas corpus based upon the plaintiff's representation that this Court stayed the September 2017 orders. After a brief recess in the proceeding, the defendant stated that she had spoken with this Court and was "informed . . . that we're not enjoined from engaging in any particular action. Apparently the Appellate Division is under the impression that there was an underlying order of custody which there isn't. And so at this time I'm going to allow the Appellate Division to do what it is that they're going to do. This matter is adjourned here." The plaintiff's counsel asked the defendant if the defendant was denying the petition for the writ of habeas corpus, to which the defendant replied, "I'm going to allow the Appellate Division to handle this case, to do whatever they deem . . . necessary." The defendant then stated "your writ is denied at this time because I can't find the basis on which to hang your writ." At that time, the defendant did not issue a written order.
On October 10, 2017, the plaintiff commenced a proceeding against the defendant pursuant to CPLR article 78 to compel the defendant to issue the writ of habeas corpus for the return of the eldest child to the plaintiff, to impose upon the defendant a $1,000 forfeiture to be personally paid by the defendant to the plaintiff pursuant to CPLR 7003(c) for failing to issue the writ of habeas corpus, and for a written order of the defendant's October 3, 2017 oral ruling.
On October 11, 2017, the defendant issued a written order denying the plaintiff's petition for a writ of habeas corpus for the return of the eldest child to the plaintiff. The defendant reasoned that the plaintiff failed to meet her burden pursuant to section 240 of the Domestic Relations Law and section 651 of the Family Court Act, as there was no existing custody order at the time the petition for a writ of habeas corpus was filed and there were no issues regarding the safety of the eldest child.
While these proceedings were ongoing in the Family Court, the plaintiff's September 25, 2017 motion, upon which the TRO was issued, was subjudice. In a decision and order on motion dated October 16, 2017, this Court, among other things, granted those branches of the plaintiff's motion which were to stay enforcement of the September 2017 writ and stated portions of the September 2017 temporary order of custody and parental access, and stayed enforcement of the September 2017 writ and so much of the September 2017 temporary order of custody and parental access as granted temporary custody of the eldest child and certain parental access to the father pending the earlier of either the hearing and determination of the appeals from the September 2017 orders or the issuance of a dispositional order in the Family Court proceedings.
Thereafter, on October 26, 2017, the plaintiff appealed from the October 11, 2017 order denying the plaintiff's petition for a writ of habeas corpus. In December 2018, this Court, inter alia, reversed the October 11, 2017 order and granted the plaintiff's petition for a writ of habeas corpus (see Matter of Poltorak v Poltorak, 167 AD3d 903, 906). This Court reasoned that "the Family Court did not have sufficient evidence before it to reach a sound conclusion that it was in the subject child's best interests for the father to have temporary custody pending determination of the issue of permanent custody" (id.).
By stipulation of the parties dated August 1, 2019, among other things, the proceeding was converted into an action. The defendant thereafter answered the plaintiff's amended complaint and raised several affirmative defenses, including that CPLR 7003(c) violates the Compensation [*3]Clause of the New York State Constitution and the separation of powers doctrine.
In October 2019, the plaintiff moved for summary judgment on the cause of action for the imposition of a $1,000 forfeiture against the defendant pursuant to CPLR 7003(c). The plaintiff contended that the defendant violated CPLR 7003(a) by refusing to issue a writ of habeas corpus and, as a result, the plaintiff is entitled to a $1,000 forfeiture to be paid personally by the defendant pursuant to CPLR 7003(c).
The defendant opposed the motion and cross-moved pursuant to CPLR 3211(a)(7) to dismiss the amended complaint and, in effect, for a judgment declaring that CPLR 7003(c) is unconstitutional. The defendant asserted, among other things, that CPLR 7003(c) is unconstitutional because it violates the Compensation Clause of the New York State Constitution and the separation of powers doctrine.[FN1]
The plaintiff replied and asserted that CPLR 7003(c) does not encroach upon the powers of the judiciary because the Legislature is empowered by article VI, section 30 of the New York State Constitution to enact legislation that regulates the judiciary. The plaintiff contended that CPLR 7003(c) does not impede judicial independence because the $1,000 forfeiture applies only when a judge refuses to issue a writ of habeas corpus pursuant to CPLR 7003(a), and, in the instant action, the defendant so refused. Moreover, the plaintiff contended that CPLR 7003(c) does not reduce judicial compensation, but rather is a punitive fine levied on a judge who refuses to comply with the requirements of CPLR 7003(a). The defendant, in further support of her cross-motion and in opposition to the plaintiff's motion, maintained that CPLR 7003(c) was unconstitutional.
In February 2020, oral argument on the plaintiff's motion and the defendant's cross-motion was held before the Supreme Court. Counsel for the plaintiff contended that the plaintiff "does not seek to punish the defendant for, quote/unquote, ruling a certain way . . . . The plaintiff invokes the statute to punish the judge, as the legislature intended, for declining to issue any ruling at all, which is what happened here." The plaintiff asserted that the forfeiture did not constitute a reduction in judicial compensation because CPLR 7003(c) only applies to "individual judges upon their failure to perform a mandated act," or, in other words, a ministerial act. The defendant replied that CPLR 7003(c) is unconstitutional, inter alia, for violating the Compensation Clause of the New York State Constitution and the separation of powers doctrine.
In an order and judgment dated July 8, 2020, the Supreme Court denied the plaintiff's motion for summary judgment on the cause of action for the imposition of a $1,000 forfeiture against the defendant pursuant to CPLR 7003(c), granted those branches of the defendant's cross-motion which were pursuant to CPLR 3211(a)(7) to dismiss the amended complaint and, in effect, for a judgment declaring that CPLR 7003(c) is unconstitutional because it violates the Compensation Clause of the New York State Constitution, and dismissed the amended complaint. The court reasoned that CPLR 7003(c) was a diminution of judicial salaries in violation of the Compensation Clause of the New York State Constitution. While the court determined that CPLR 7003(c) was unconstitutional as violative of the Compensation Clause of the New York State Constitution, the court concluded that CPLR 7003(c) did not violate of the separation of powers doctrine because "it is a court that decides whether the writ was wrongly denied and whether in a particular case the forfeiture is applicable." The plaintiff appeals.
III. Analysis
"'In considering a motion to dismiss . . . pursuant to CPLR 3211(a)(7) the court must accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory'" (Ikezi v 82nd St. Academics, 221 AD3d 986, 987, quoting Buchanan v Law Offs. of Sheldon E. Green, P.C., 215 AD3d 790, 791; see Leon v Martinez, 84 NY2d 83, 87-88). In the instant appeal, whether the plaintiff alleged a cause of action for the imposition of a $1,000 forfeiture against the defendant pursuant to CPLR 7003(c) turns on the provision's constitutionality.
Generally, "'[l]egislative enactments are entitled to a strong presumption of constitutionality'" (White v Cuomo, 38 NY3d 209, 216 [internal quotation marks omitted], quoting [*4]Dalton v Pataki, 5 NY3d 243, 255; see Matter of R.M. v C.M., 226 AD3d 153, 161). When a legislative enactment "is challenged on constitutional grounds, there is both an 'exceedingly strong presumption of constitutionality' and a 'presumption that the [l]egislature has investigated for and found facts necessary to support the legislation'" (White v Cuomo, 38 NY3d at 217, quoting I.L.F.Y. Co. v Temporary State Hous. Rent Commn., 10 NY2d 263, 269). "[W]hile the presumption of constitutionality is not irrefutable," in this appeal, the defendant bears the heavy burden of demonstrating the unconstitutionality of CPLR 7003(c) beyond a reasonable doubt (id. at 216; see Matter of R.M. v C.M., 226 AD3d at 161). "Thus, a facial challenge must fail so long as there are circumstances under which the challenged provision could be constitutionally applied. In other words, the challenger must establish that no set of circumstances exists under which [the challenged provision] would be valid" (Matter of R.M. v C.M., 226 AD3d at 161 [citation and internal quotation marks omitted]).
A. Historical Perspective of CPLR 7003
First, we examine the legislative history of the statute now known as CPLR 7003. Indeed, the forfeiture provision, now subdivision (c) of CPLR 7003, historically has had a place in our statutes since the inception of our great State in the late 18th century. However, the forfeiture mandated by CPLR 7003(c), despite having deep-seeded roots in our legislative history, has been called into question as evidenced by the 1959 legislative notes of the Advisory Committee on Practice and Procedure (hereinafter 1959 Advisory Committee) and by a handful of cases that refer to the forfeiture provision as it relates to habeas corpus (see Third Prelim Rep of Advisory Comm on Prac & Pro, 1959 NY Legis Doc No. 17 at 58-59). Nonetheless, CPLR 7003, inclusive of subdivision (c), was ultimately enacted (see L 1962, ch 308) as follows: CPLR 7003(a) provides that
"[t]he court to whom the petition is made shall issue the writ [of habeas corpus] without delay on any day, or, where the petitioner does not demand production of the person detained or it is clear that there is no disputable issue of fact, order the respondent to show cause why the person detained should not be released. If it appears from the petition or the documents annexed thereto that the person is not illegally detained or that a court or judge of the United States has exclusive jurisdiction to order him released, the petition shall be denied."
As per subdivision (b),
"[a] court is not required to issue a writ of habeas corpus if the legality of the detention has been determined by a court of the state on a prior proceeding for a writ of habeas corpus and the petition presents no ground not theretofore presented and determined and the court is satisfied that the ends of justice will not be served by granting it."
Finally, subdivision (c) addresses the "penalty for [a] violation," specifically stating that:
"[f]or a violation of this section in refusing to issue the writ [of habeas corpus], a judge, or, if the petition was made to a court, each member of the court who assents to the violation, forfeits to the person detained one thousand dollars, to be recovered by an action in his name or in the name of the petitioner to his use."
Moreover, CPLR 7002(a) provides that
"[a] person illegally imprisoned or otherwise retrained in his liberty within the state, or one acting on his behalf or a party in a child abuse proceeding subsequent to an order of the family court, may petition without notice for a writ of habeas corpus to inquire into the cause of such detention and for deliverance. A judge authorized to issue writs of habeas corpus having evidence, in a judicial proceeding before him, that any person is so detained shall, on his own initiative, issue a writ of habeas corpus for the relief of that person."
Various iterations of the statute now known as CPLR 7003 have been enacted by the New York State Legislature, and the statute has remained virtually unchanged in that it has consistently had a provision imposing a monetary penalty on a judge or judges who did not issue a writ of habeas corpus. The first iteration of CPLR 7003, passed in 1787, a year before New York [*5]became a state in the Union, was one of our first statutes and was largely based on the English Habeas Corpus Act of 1679 (see Laws of NY passed at Sessions of Legis 1785-1788, vol II, ch 39). Section IX of the English Habeas Corpus Act of 1679 provided that "it shall and may be lawful[ ] to and for any Prisoner and Prisoners as aforesaid to move and obtain[ ] his or their Habeas Corpus as well out of the High Court of Chauncery or Court of Exchequer as out of the Courts of Kings Bench or Common Pleas . . . [a]nd if any Judge or Judges Baron or Barons for the time being of the Degree [*6]or the Coife of any of the Courts aforesaid in the Vacation time upon the view of the Copy or Copies of the Warrant or Warrants of Commit[ ]ment or Detainer or upon Oath made that such Copy or Cop[i]es of were den[i]ed as aforesaid shall deny any Writ[ ] of Habeas Corpus by this Act required to be granted being moved for as aforesa[*7]id they shall severally forfeit[ ] to the Prisoner or Partie[s] grieved the sum[ ] of Five hundred pounds to be recovered in manner aforesaid."
When discussing the necessity of writs of habeas corpus, Alexander Hamilton noted,
"'[t]o bereave a man of life (says he) or by violence to confiscate his estate, without accusation or trial, would be so gross and notorious an act of despotism, as must at once convey the alarm of tyranny throughout the whole nation; but confinement of the person by secretly hurrying to goal, where his sufferings are unknown or forgotten, is a less public, a less striking, and therefore a more dangerous engine of arbitrary government'" (Madison, Federalist No. 84 [1788], quoting Sir William Blackstone Commentaries on the Laws of England, Book 1 at 136 [1765]).
Thus, borrowing from the English Habeas Corpus Act, the first New York State provision relating to writs of habeas corpus provided that
'"it shall and may be lawful to and for any prisoner and prisoners as aforesaid, to move for and obtain his or their habeas corpus, as well out of the court of chancery, as out of the supreme court; and if the chancellor, or any justice of the supreme court, for the time being, in the vacation time, upon view of the copy or copies of the warrant or warrants of commitment, or detainer, or upon oath made that such copy or copies were denied as aforesaid, shall deny any writ of habeas corpus, by this act required to be granted, being moved for as aforesaid, they shall severally forfeit to the prisoner or party grieved, the sum of five hundred pounds, to be recovered in manner aforesaid" (Laws of NY passed at Sessions of Legis 1785-1788, vol II, ch 39).
As articulated by the Court for the Correction of Errors of New York, in 1811, the forfeiture provision's purpose was "to prevent any delay in the allowance of writs of habeas corpus, as to which no discretion was to be exercised. The evil which was to be remedied, was the delay in bringing persons committed to prison to trial" (Yates v Lansing, 9 Johns 395, 403).
More than 40 years later, in 1829, the statute was reconstituted under the Revised Statutes of New York, which raised and converted the amount to be forfeited by the judge or judges from £500 to $1,000, as well as removed the reference to "vacation time" (see 2 Rev Stat of NY part III, ch IX, title I, § 31). The statute was then renamed in the Field Code of 1848, which retained the forfeiture provision (see Code of Civ Pro of State of NY [Field Code], L 1848, part III, title I, ch V, § 1336). Thereafter, the statute was again reconstituted in section 2020 of the New York Code of Civil Procedure of 1880, which provided that
"[a] court or a judge, authorized to grant either writ, must grant it without delay, whenever a petition therefor is presented, as prescribed in the foregoing sections of this article, unless it appears, from the petition itself, or the documents annexed thereto, that the petitioner is prohibited by law from prosecuting the writ. For a violation of this section, a judge, or, if the application was made to a court, each member of the court, who assents to the violation, forfeits to the prisoner one thousand dollars, to be recovered by an action in his name, or in the name of the petition to his use" (NY Code of Civ Pro, L 1880, ch XVI, title II, art III, § 2020).
In 1920, the Civil Practice Act was enacted. Section 1235 of the Civil Practice Act, which mirrored the 1880, 1848, and 1829 iterations of the statute now known as CPLR 7003, provided that
"[a] court or a judge authorized to grant either writ must grant it without delay whenever a petition therefor is presented, as prescribed in the foregoing sections of this article, unless it appears from the petition itself or the documents annexed thereto that the petitioner is prohibited by law from prosecuting the writ. For a violation of this section, a judge, or, if the application was made to a court, each member of the court who assents to the violation, forfeits to the prisoner one thousand dollars, to be recovered by an action in his name or in the name of the petitioner to his use."
Upon the enactment of the CPLR in 1962 (see L 1962, ch 308; CPLR 10001), section 1235 of the Civil Practice Act became CPLR 7003, the statute at issue, but, as previously mentioned, not without controversy (see Vincent C. Alexander, Prac Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 7003 at 107 [2013 ed]). When the legislature was drafting the CPLR, the 1959 Advisory Committee recommended against including subdivision (c) in CPLR 7003. Notably, the 1959 legislative notes revealed that the 1959 Advisory Committee intended to delete what is now known as subdivision (c) in its entirety. Specifically, the 1959 Advisory Committee observed that the forfeiture provision of section 1235 of the Civil Practice Act "impose[d] an unjust burden upon a judge whose failure to issue the writ results from an honest mistake of law. His error can be corrected by application to another judge or by appeal. Moreover, the provision is not used." Based on these factors, the 1959 Advisory Committee recommended that the provision be deleted. Nevertheless, the forfeiture provision present in all previous iterations of the statute was enacted as CPLR 7003(c).
While the amount to be forfeited was increased over time from £500 to $1,000, the previous iterations of CPLR 7003(c) remained largely the same and have consistently provided for the imposition of a penalty upon a judge or judges who do not issue a writ of habeas corpus in a case where one should be issued. Despite its long legislative history, and as noted by the 1959 Advisory Committee and by the parties to the instant appeal, CPLR 7003(c) and its previous iterations have been invoked or cited sparingly, and relief pursuant to this provision has never to our knowledge been granted. The following are a handful of cases we have found that mention a previous version of CPLR 7003(c).
Beginning with Yates v Lansing, in 1810, the plaintiff therein sought to recover a penalty from a judge who recommitted the plaintiff for the same offenses after the plaintiff had been released pursuant to habeas corpus (see Yates v Lansing, 5 Johns 282, 287, affd 9 Johns 395). In declining to impose a forfeiture on the judge, the Supreme Court opined
"[n]o man can foresee the disastrous consequences of a precedent in favor of such a suit [imposing the penalty]. Whenever we subject the established courts of the land to the degradation of private prosecution, we subdue their independence, and destroy their authority. Instead of being venerable before the public, they become contemptible; and we thereby embolden the licentious to trample upon every thing sacred in society, and to overturn those institutions which have hitherto been deemed the best guardians of civil liberty" (id. at 298).
On appeal, the Court for the Correction of Errors of New York affirmed the judgment therein (Yates v Lansing, 9 Johns 395, 413-414). The Court for the Correction of Errors observed that
"[i]t has been said that the English habeas corpus act and that of this state are substantially the same, and are to receive the same construction, and that the former [*8]was intended to guard against the power of the crown and its ministers. But as there is no king, nor lords, nor secretaries of state here who can commit, that could not be the object of our statute" (id. at 405).
The Court for the Correction of Errors further questioned the applicability of the penalty and stated
"[t]he allowance of a writ of habeas corpus, we contend, is a judicial act; and the judge is compelled, under the penalty, to exercise his judicial discretion; and if he refuses to allow a habeas corpus to which the party is entitled, will an error of judgment protect him against the penalty? This, then, is contrary to the common law doctrine, that a judge is not responsible for an error of judgment. And does not the [forfeiture provision] equally entrench on that doctrine, and make a judge liable for recommitting a person discharged under a habeas corpus, though he does it under a mistake?" (id. at 413-414).
Even then, the courts perceptively recognized the constitutional concerns presented by the forfeiture provision and held that a judge cannot be held personally liable for a mistake in judgment when assessing a petition seeking habeas corpus relief (see In Re John Van Ness Yates; Yates v. Lansing, 1809-1811, Historical Society of the New York Courts, available at https://history.nycourts.gov/case/yates-cases [last accessed July 8, 2025]).
For more than 50 years after Yates v Lansing, the forfeiture provision associated with requests for habeas corpus relief was not mentioned in our case law. Then, in 1867, the Court of Appeals in Nash v People (36 NY 607, 609) addressed the issue of whether a court that granted a writ of habeas corpus had the jurisdiction to do so. As previously discussed, when the Legislature enacted the Revised Statutes, it reconstituted the forfeiture provision to provide that
"[i]f any court or officer, authori[z]ed by the provisions of this Article, to grant writs of habeas corpus or certiorari, shall refuse to grant such writ when legally applied for, every member of such court, who shall have assented to such refusal, and every such officer, shall severally forfeit to the party aggrieved, one thousand dollars" (2 Rev Stat of NY part III, ch IX, title I, § 31).
Prior to the enactment of the Revised Statutes, "when the application was made to the court, the members were not liable to this penalty; it attached only to those judges who refused to grant the writ in 'the vacation time'" (Matter of Nash, 16 Abb Pr 281, quoting 1 Rev L 355, § 4). On appeal, the Court of Appeals determined that the city court that granted the writ of habeas corpus lacked the jurisdiction to issue it and held that the act of granting a writ of habeas corpus was ministerial in nature, not discretionary, regardless of whether the judge was acting while the court was in session or during vacation time (see Nash v People, 36 NY at 608-609, 616; cf. People ex rel Ryan v Russell, 1 Abb Pr NS 230, 232 [Sup Ct, 1st Dist, Gen Term] [finding that a city judge had the jurisdiction to issue a writ of habeas corpus because it is a judicial act; the decision did not address the forfeiture provision]). Additionally, a concurring Judge indicated that "[w]e are driven to this conclusion, as it cannot be presumed that the legislature intended to adopt a principle in conflict with long established and an uniform current of authority, and impose a penalty upon a judge or subject him to personal responsibility, in a matter wherein he acted judicially" (Nash v People, 36 NY at 616 [Davies, Ch J., concurring]).
More than 70 years later, in 1939, the Court of Appeals, in Hoff v State of New York (279 NY 490), recognized that
"[o]ur constitutional guarantees of liberty are merely empty words unless a person imprisoned or detained against his will may challenge the legality of his imprisonment and detention. The writ of habeas corpus is the process devised centuries ago for the protection of free men. It has been cherished by generations of free men who had learned by experience that it furnished the only reliable protection of their freedom. The right of persons, deprived of liberty, to challenge in the courts the legality of their detention is safeguarded by the Constitution of the United States and by the Constitution of the State. The Legislature could not deprive any person within the State of the privilege of a writ of habeas corpus" (id. at 492, citing NY Const art 1, § 4).
To emphasize that point, the Court of Appeals cited section 1235 of the Civil Practice Act in its entirety (see Hoff v State of New York, 279 NY at 493). But the Court of Appeals did not rely on section 1235 of the Civil Practice Act for its ultimate ruling; indeed, it did not apply the statute to the facts of the case (see also People ex rel. Woodbury v Hendrick, 215 NY 339, 345 [citing to Code of Civil Procedure § 2020 but not applying the statute]; Matter of Davies, 168 NY 89, 103-104 [same]; People ex rel. Farley v Crane, 94 App Div 397, 402 [same]; People ex rel. Peabody v Chanler, 116 NYS 62, 65 [Sup Ct, Westchester County] [same]; People ex rel. James v Society for Prevention of Cruelty to Children, 19 Misc 677, 678 [Sup Ct, New York County] [same]). To explain, the claimant in Hoff, a patient detained in a state hospital, signed a verified petition for a writ of habeas corpus and placed it in an envelope addressed to his attorney (see Hoff v State of New York, 279 NY at 491). Instead of sending it to his attorney, the mail was forwarded to the claimant's wife at the direction of the superintendent of the hospital, thereby delaying the calendaring of the writ of habeas corpus (see id. at 491-492). Ultimately, the claimant was found "sane" by a jury on his writ of habeas corpus and was ordered released (id. at 494).
Thus, the Court of Claims and/or a judge in Hoff did not delay in granting the writ of habeas corpus. Rather, the delay in bringing the claimant before the Court of Claims on his writ of habeas corpus was attributed to the superintendent of the hospital where the claimant was detained as a patient (see id.). The Court of Appeals found that the superintendent acted with "misfeasance" in forwarding the claimant's mail to his wife rather than to the intended addressee, his lawyer. Since there was a finding that the claimant's mental condition was substantially the same at the time the petition was signed as it was when it was ultimately heard, the claimant's release from the hospital was delayed by approximately two weeks (id. at 493-494). As a result, the Court of Appeals further found that the State could be held liable for such delay, but that the amount of damages was an issue to be determined by the factfinder (see id.).
Similarly, while referring to the statute without relying on it for its holding, the Supreme Court, in People ex rel. Ostwald v Craver (188 Misc 5, 7 [Supt Ct, Rensselaer County], affd 272 App Div 181), did not reach the issues presented in the instant appeal. Rather, the Ostwald court recognized that
"[p]rompt relief and action by means of habeas corpus is attested further by the mandate of the Legislature of the State of New York (Civ. Prac Act, art. 77, § 1235), that a court or judge authorized to grant a writ of habeas corpus must do so without delay, and if refused forfeits to the prisoner $1,000."
As in Hoff, while mentioning the statute and speaking to the underlying and important purpose of a writ of habeas corpus, the court says nothing else about the statute.
Moreover, CPLR 7003(c), in the very rare instances that it has been invoked by a party, has never to our knowledge been a basis for relief. To be sure, we have discovered only seven cases, aside from the instant case, in which relief pursuant to CPLR 7003(c) has been requested (see Matter of Kevilly v Honorof, 287 AD2d 504 [dismissing the petition because the petitioner failed to establish a clear legal right to the relief sought]; Matter of Wilson v Harvey, 35 AD2d 679 [summarily denying an application to recover a penalty pursuant to CPLR 7003(c)]; Matter of De Groat v Staley, 21 AD2d 972 [same]; Wik v Dollinger, 2014 WL 1746483, 2014 US Dist LEXIS 60226 [WD NY, No. 12cv6399-CJS] [dismissing the complaint against a Justice, finding, inter alia, that CPLR 7003[c] did not apply because a writ of habeas corpus had been issued]; Lacey v Calabrese, 2005 WL 1285702, 2005 US Dist LEXIS 10006 [ED NY, No. 05cv2040 (SJF) (WDW)] [plaintiff's complaint sought, among other things, relief pursuant to CPLR 7003[c], and the complaint was dismissed on grounds other than the constitutionality of the statute]; Woodard v Mennella, 861 FSupp 192, 197 [ED NY] [granting the defendants' motion for summary judgment because the plaintiff failed to establish a cause of action pursuant to CPLR 7003(c)]; Evans v Vogt, 1980 US Dist LEXIS 11492 [SD NY, No. 70civ2261] [granting the defendant Judge's motion to dismiss a petition seeking relief pursuant to, inter alia, CPLR 7003(c) because the Judge was absolutely immune from suit brought pursuant to 42 USC § 1983]).
Indeed, while the Legislature's purpose for enacting the prior iterations of CPLR 7003, namely to protect an individual's right of habeas corpus by ensuring a writ is signed in a timely fashion, is a valid and legitimate one, in the more than 200 years and the spanning of four centuries that these iterations of the statute have existed, forfeiture relief pursuant thereto has never been imposed to our knowledge, and until now, the constitutionality of CPLR 7003(c) has not been [*9]examined.
B. Constitutionality of Forfeiture Provisions As They Relate to Habeas Corpus in Other Jurisdictions
At the outset, it appears that the constitutionality of similar forfeiture provisions has been addressed by courts in other jurisdictions, demonstrating the widespread controversy surrounding forfeiture provisions in this context, and, in one of those jurisdictions, an analogous forfeiture provision has been deemed unconstitutional. While only one court has explicitly found that a forfeiture provision as it relates to habeas corpus is unconstitutional, the decisions of the other courts that have addressed such forfeiture provisions highlight the growing apprehension surrounding the imposition of such a penalty against a judge.
First, in 1891, in Corneilison v Toney (12 Ky L Rptr 746, 746 [Ky Ct App]), the Superior Court of Kentucky, Kentucky's intermediate appellate court, considered an action by a plaintiff to recover a $500 penalty from a judge who declined to issue a writ of habeas corpus. There, the Kentucky Superior Court opined that
"[i]f, upon the inspection of the petition, or other evidence, the judge is of [the] opinion that probable cause for believing the applicant to be illegally detained is not shown, it is not only his right, but his duty to refuse the writ; and, to hold that he is, in such case, liable to the penalty fixed in the statute, because, in the opinion of some one else, probable cause was shown in the application, is a proposition repugnant to reason" (id. at 747).
The Kentucky Superior Court went on to note
"[t]hat a judge should be compelled to decide new and difficult questions, at the peril of incurring a severe penalty, if he happens to decide wrong; that pure intentions and honest endeavors to perform his official duties shall afford him no protection, are propositions repugnant to reason and humanity, and can not be law . . . . Let us beware that, in our zeal for securing personal liberty, we do not destroy the virtuous independence and rightful authority of our courts of justice, and thereby subvert the foundation of social order" (id. at 747, citing Yates v Lansing, 9 Johns at 426 [Platt concurring]).[FN2]
Thus, in Corneilison, the Kentucky Superior Court concluded that issuing a writ of habeas corpus is discretionary and, therefore, forfeiture cannot lie. And more importantly for our purposes, the Kentucky Superior Court began to examine whether Kentucky's forfeiture provision violated the separation of powers doctrine.
Then, in 1896, the Supreme Court of Missouri, that state's highest court, addressed, in dicta, a Missouri statute that imposed a $1,000 penalty on a judge who refused to issue a writ of habeas corpus (see State ex rel. Walker v Dobson, 135 Mo 1, 17-18, 36 SW 238, 242). In State ex rel. Walker v Dobson, the Missouri Supreme Court found that a petition for the issuance of a writ of habeas corpus was insufficient to state a cause of action (see State ex rel. Walker v Dobson, 135 Mo at 11, 36 SW at 240). Nonetheless, the Missouri Supreme Court examined the provision requiring forfeiture against a judge or court and posited that the provision violated the separation of powers doctrine, stating that
"the legislature of this state has, in our opinion, no power to provide a penalty for a judge or court simply because a writ of habeas corpus is denied, which denial is based upon an honest endeavor to discharge what is believed the demands of recognized and imperative judicial duty. If the legislature may go further than this, then it can destroy the independence of the judiciary, and punish a judge because he [or she], after due deliberation, denies any other writ, or honestly enters or renders any merely erroneous order or judgment" (State ex rel. Walker v Dobson, 135 Mo at 18, 36 SW at 242; see State ex rel. Barker v Wurdeman, 254 Mo 561, 572, 163 SW [*10]849, 852 [stating that in State ex rel. Walker v Dobson, the Missouri Supreme Court held that the Missouri statute was invalid and "that the invalidity consisted in an interference by the Legislature with a judicial function which required the exercise of discretion in its performance and hence could not be abrogated by a statute"]).
That same year, the Supreme Court of Minnesota, that state's highest court, in Hoskins v Baxter (64 Minn 226, 227, 66 NW 969, 969), considered a case in which the plaintiff sought to recover a $1,000 penalty against a judge whom the plaintiff alleged "wilfully refused" to grant the plaintiff's petition for a writ of habeas corpus. The only issue presented to the Minnesota Supreme Court was whether the plaintiff, who contended that "the allowance of the writ of habeas corpus is purely a ministerial act, and that the judge or officer to whom a petition for the writ is presented has no discretion, but must issue the writ," stated a cause of action to recover the penalty (id.). Finding that the plaintiff failed to state a cause of action, the Minnesota Supreme Court reasoned that "the writ of habeas corpus is a constitutional and imperative writ of right, for the protection of personal liberty, yet it does not issue, as a matter of course, to every applicant" (Hoskins v Baxter, 64 Minn. at 228, 66 NW at 969). The Minnesota Supreme Court disagreed with the plaintiff's contention that the issuance of a writ of habeas corpus is a ministerial act. Indeed, the Minnesota Supreme Court opined that "[i]f the granting of the writ is a ministerial act, and it must be allowed, under a penalty of $1,000, whenever applied for, as claimed by the plaintiff, then the courts are under the control of all offenders against the laws of the state" (id.). The Minnesota Supreme Court further explained that "the rule is too well settled to justify serious argument that an application for a writ of habeas corpus must show probable cause for the issuing of the writ . . . . The court will not go through the idle ceremony of bringing before it the petitioner, if it is apparent from his application that he must be immediately remanded" (Hoskins v Baxter, 64 Minn at 228, 66 SW at 696-970). Thus, similar to the Kentucky Superior Court in Corneilison v Toney, the Minnesota Supreme Court in Hoskins determined that the act of issuing a writ of habeas corpus is discretionary, rather than ministerial, and, thus, when a judge exercises his or her discretion, the forfeiture provision does not apply (see Hoskins v Baxter, 64 Minn at 228, 66 NW at 969).
Several years after these decisions, in 1915, the Court of Appeals of Georgia addressed an analogous forfeiture provision in Jones v Hill (17 Ga App 151, 87 SE 755). There, the Georgia Court of Appeals did not impose the forfeiture provision as it relates to a writ of habeas corpus against a judge (see Jones v Hill, 17 Ga App at 158, 87 SE at 758). After determining that the issuance of a writ of habeas corpus is a matter of judicial discretion, as opposed to a ministerial act, the Georgia Court of Appeals stated that the forfeiture provision can only be imposed "where the failure to issue the writ is not due to the exercise of judicial discretion (although it may be improperly exercised), but is a matter of arbitrary caprice or the result of improper motive" (Jones v Hill, 17 Ga App at 159, 87 SE at 758). The Georgia Court of Appeals determined that the plaintiff failed to sufficiently allege that the judge had acted "voluntarily, willfully, and without any cause or reason" in denying the writ of habeas corpus and affirmed the dismissal of the complaint (Jones v Hill, 17 Ga App at 158, 87 SE at 758).
As noted above, one court has held that a forfeiture provision similar to CPLR 7003(c) was unconstitutional: the Court of Appeal of California, First Appellate District. In 1959, the California Court of Appeal, in Oppenheimer v Ashburn (173 Cal App 2d 624, 626-627, 343 P2d 931, 932), addressed a California statute that assessed a forfeiture of an amount not exceeding $5,000 against judges who failed to grant an order for a writ of habeas corpus after a proper application was made. Notwithstanding the fact that the forfeiture provision had been amended to remove all references to judges while that case was pending (see Oppenheimer v Ashburn, 173 Cal App 2d at 628-629, 343 P2d at 933), the California Court of Appeal struck down the provision and determined, in effect, that it violated the separation of powers doctrine. The California Court of Appeal stated that "[t]he process of judgment cannot be objective if it is weighted so that when rendered one way the judge is immune and, in the opposite way, subject to suit" (Oppenheimer v Ashburn, 173 Cal App 2d at 633, 343 P2d at 936). Indeed, the California Court of Appeal opined that "[o]bjectivity is not a quality that can be strained and baited . . . . Independence of judgment cannot truly survive the impediment of reward and punishment. The judge who must choose between a decision that leads to safety and one that may mean personal monetary loss is not a free judge" (id.). The California Court of Appeal in Oppenheimer aptly identified the serious concerns with forfeiture provisions like CPLR 7003(c), namely, that judges, when under the threat of a penalty [*11]like a forfeiture, are not "free" to meaningfully exercise their judgment in evaluating petitions for writs of habeas corpus.
In 2001, the Supreme Court of Utah, Utah's highest court, analyzed that state's analogous forfeiture provision, which imposed a $5,000 penalty on "[a]ny judge, whether acting individually or as a member of a court, who wrongfully and willfully refuses to allow a writ of habeas corpus whenever proper application for the same has been made" (Thomas v Lewis, 2001 UT 49, *P6, 26 P3d 217, 218, quoting Utah Code Ann. [former] § 78-35-1). The forfeiture provision at issue involved a more stringent standard than in CPLR 7003(c), that, for the penalty to apply, the judge would have to be acting "wrongfully and willfully" (id.). However, the New York and Utah statutes are not without similarities. Notably, as when the 1959 Advisory Committee was contemplating CPLR 7003(c), the Utah Supreme Court observed that the Utah forfeiture provision had rarely been invoked. Indeed, the Utah Supreme Court pointed out that "[a]t the very least, it appears that the provision has simply evaded any serious legislative attention" (Thomas v Lewis, 2001 UT 49, *P9, 26 P3d at 220). In affirming the dismissal of the subject complaint based on a lack of subject matter jurisdiction, and without reaching the issue of the forfeiture provision's constitutionality, the Utah Supreme Court nevertheless recognized that the forfeiture provision therein "arguably impinges upon the most fundamental aspects of judicial discretion" (Thomas v Lewis, 2001 UT 49, *10, 26 P3d at 220; see Jackson v Hanson, 2004 UT App 415, 2004 WL 2567904, *2, 2004 Utah App LEXIS 473, *4 [Utah Ct App; No. 20040535-CA] [concluding that the plaintiff did not comply with notice of claim requirements and so the Utah Court of Appeal did not have subject matter jurisdiction over the action]).
Most recently, in 2018, the Court of Appeals of Nevada, like the Utah Supreme Court, did not reach the issue of the constitutionality of Nevada's analogous forfeiture provision (see Smith v Walsh, 134 Nev 1012, 1012 [Ct App]). In Smith v Walsh, the plaintiff filed a petition for a writ of habeas corpus, alleging that the Presiding Judge violated Nevada's forfeiture provision by initially refusing to rule on the petition and, thereafter, denying the petition in a written order, and seeking to recover a $5,000 penalty (see id.). In the Nevada district court, the defendant Judge asserted, inter alia, that the forfeiture provision at issue was unconstitutional as violative of the separation of powers doctrine (see id.). Determining that the Judge was entitled to absolute immunity, the Nevada district court dismissed the complaint (see id.). On appeal, the Nevada Court of Appeals considered only whether the plaintiff sufficiently pleaded damages to comply with the jurisdictional amount-in-controversy requirement. While acknowledging that the challenge to the Nevada district court's ruling turned on the constitutionality of the forfeiture provision, the Nevada Court of Appeals specifically declined to reach the constitutionality issue presented, determining that it was unnecessary to resolve that issue (see id.). The Nevada Court of Appeals ultimately concluded that the plaintiff failed to satisfy the amount-in-controversy requirement and that his complaint was properly dismissed (see id.). Unlike the cases cited in this section that allude to the constitutional concerns with a forfeiture provision as it relates to the issuance of writs of habeas corpus, the Nevada Court of Appeals in Smith expressly declined to opine on the constitutionality of the forfeiture provision at issue therein (see id.).
In sum, the aforementioned cases demonstrate the far-reaching concerns with imposing such a forfeiture against a judge, and, as in the New York cases, none of the states in the aforementioned cases have imposed their respective forfeiture provisions [FN3]. Rather, with the exception of Smith v Walsh, these cases arguably support the same premise: that when a judge exercises his or her judgment, the judge cannot be held personally liable for declining to issue a writ of habeas corpus. A contrary finding would be an unconstitutional encroachment upon the independence of the judiciary.
C. New York State Judicial Compensation Clause
Turning to the case at bar, as the Supreme Court correctly determined, and as the defendant correctly contends, CPLR 7003(c) violates the Compensation Clause of the New York State Constitution. Article VI, section 25(a) of the New York State Constitution, also known as the "Compensation Clause," provides, in relevant part, that
"[t]he compensation of a judge of the court of appeals, a justice of the supreme court, a judge of the court of claims, a judge of the county court, a judge of the surrogate's court, a judge of the family court, a judge of a court for the city of New York established pursuant to section fifteen of this article, a judge of the district court or of a retired judge or justice shall be established by law and shall not be diminished during the term of office for which he or she was elected or appointed."
The Compensation Clause of the New York State Constitution is analogous to the Compensation Clause of the United States Constitution (see US Const art III § 1). The purpose of both constitutional provisions is "to promote judicial independence and ensure that the pay of prospective judges, who choose to leave their practices or other legal positions for the bench, will not diminish" (Matter of Maron v Silver, 14 NY3d 230, 250; see United States v Will, 449 US 200, 221; Bransten v State of New York, 30 NY3d 434, 439). The Compensation Clause of the New York State Constitution serves to protect against the danger of external control over judicial pay as a means by which to exert influence over the judiciary and to preclude the legislature from diminishing salaries in recognition of the risk that salary manipulation might be used as retaliation for unpopular judicial decisions (see Bransten v State of New York, 30 NY3d at 439; Matter of Maron v Silver, 14 NY3d at 252).
In the instant action, the defendant has the burden of establishing, beyond a reasonable doubt, a violation of the Compensation Clause of the New York State Constitution by demonstrating that CPLR 7003(c) either "(1) is a direct diminishment of [her] compensation; or (2) is an indirect diminishment that targets judges for disadvantageous treatment" (Bransten v State of New York, 30 NY3d at 439). The defendant contends that CPLR 7003(c) presents an indirect diminishment of judicial compensation, whereas the plaintiff asserts that CPLR 7003(c) is not a diminishment of judicial compensation at all. On its face, CPLR 7003(c) does not present a direct diminishment of judicial compensation, however, we conclude that, based on the foregoing, CPLR 7003(c) indirectly diminishes judicial compensation and is, thus, unconstitutional.
In US v Hatter, the United States Supreme Court outlined four features of the statute at issue that, taken together, led to the conclusion that the statute discriminated against judges in the manner that the federal Compensation Clause prohibits (see US v Hatter 532 US 572-574; Bransten v State of New York, 30 NY3d at 445-446).
"First, the Hatter Court considered the class of affected persons that judges should be compared against and determined the proper class consisted of those to whom the law applied, namely all federal employees. Second, the Court considered whether the law imposed the same financial obligation on all members of that class, or whether it treated judges differently from other federal employees. The Court found the law imposed a new financial obligation upon sitting judges that it did not impose on any other group of federal employees. Third, the Court determined that the law adversely affected judges as it imposed a substantial cost on judges with little or no expectation of substantial benefit for most of them. Finally, the Court examined whether there was a sound justification for the statutory distinction between judges and other federal employees" (Bransten v State of New York, 30 NY3d at 444 [citation omitted]; see US v Hatter, 532 US at 572-574).
The Court of Appeals has applied the Hatter factors in applying the New York Compensation Clause (see Bransten v State of New York, 30 NY3d at 438-439, 443).
Here, the defendant met her burden of demonstrating beyond a reasonable doubt that CPLR 7003(c), which requires a judge to forfeit $1,000 for refusing to issue a writ of habeas corpus to the individual petitioning for such a writ in a case where one should have been issued, is a diminution of judicial compensation, albeit an indirect one, in violation of the Compensation Clause of the New York State Constitution. Applying the Hatter factors to CPLR 7003(c), we conclude that CPLR 7003(c) is violative of the Compensation Clause of the New York State Constitution as an [*12]improper legislative target on judges. The forfeiture at issue may be sought against a judge by a party aggrieved by the judge's determination of the party's petition for a writ of habeas corpus (see id.). The statute holds a judge personally responsible for paying the forfeiture sum of $1,000 to the aggrieved litigant (see id.). By the plain language of CPLR 7003(c), the forfeiture is to be paid personally by a judge, without question, from the judge's own personal income, thereby establishing an unlawful diminution of judicial compensation in violation of the Compensation Clause of the New York State Constitution. Thus, by imposing a forfeiture, CPLR 7003(c) discriminates against judges who, upon exercising their judgment to determine whether the subject of the writ of habeas corpus is or is not legally detained, do not issue a writ of habeas corpus. Contrary to the plaintiff's contention, reaching the merits of a petition for a writ of habeas corpus is clearly not a mere ministerial act by a judge, but rather requires a judge to exercise his or her judgment. Indeed, there exists the strong possibility that a judge may be improperly influenced to issue the writ of habeas corpus out of fear of personal retribution and so as to avoid the consequence mandated by CPLR 7003(c). Such a circumstance runs afoul of the purpose of the Compensation Clause of the New York State Constitution, which is to preserve the independence of the judiciary from the legislature's influence via salary manipulation in retaliation for unpopular decisions (see Bransten v State of New York, 30 NY3d at 439; Matter of Maron v Silver, 14 NY3d at 252).
Moreover, the current structure and accessibility of our court system arguably render unsound the original justification for the previous iterations of CPLR 7003(c), which were, in part, to prevent delay during "vacation time." As noted above, the origins of CPLR 7003(c) trace back to the English Habeas Corpus Act of 1679, during which time the forfeiture provision was crucial to ensure the habeas rights of those living under the tyranny of kings and lords, specifically to "guard against the power of the crown and its ministers" (Yates v Lansing, 9 Johns at 405). Here, and as the Utah Supreme Court acknowledged about Utah's own forfeiture provision, CPLR 7003(c) has avoided legislative review despite the fact that "the statutory, political, and social landscape surrounding it has evolved substantially" (Thomas v Lewis, 2001 UT 49, *P11, 26 P3d at 220). We have long been emancipated from British rule and we do not answer to any king, queen, lord, or baron.
The current framework of our judiciary has grown exponentially since 1787 to include many more judges and a robust trial and appellate division, as well as various safeguards to ensure that no person is unlawfully detained. As the amici point out in their brief, the penalty imposed by CPLR 7003(c) is not the only remedy available for a litigant seeking to obtain habeas corpus relief; rather, there are other remedies for a party to pursue in order to challenge the denial of a petition for a writ of habeas corpus, including, a direct appeal, which may, as in this case, change the determination of the petition for a writ of habeas corpus (see Matter of Poltorak v Poltorak, 167 AD3d at 906), thereby rendering CPLR 7003(c) unnecessary and unsound. To the extent the plaintiff contends that the appellate process is an insufficient remedy as it could potentially result in, as the plaintiff calls it, an "extensive delay," this argument is unavailing, as there are immediate remedies within the appellate court, such as emergency applications and calendar preferences, to expedite the process. Thus, the forfeiture mandated by CPLR 7003(c) does not advance the primary purpose of the habeas corpus statute, which is to ensure that a writ is heard expeditiously. Rather, its purpose is what it says it is: to impose a judicial penalty.
Furthermore, the lack of any cases in New York imposing a forfeiture against a judge arguably demonstrates that the judiciary is doing precisely what it is constitutionally mandated to do, in that it evaluates the merits of a petition for a writ of habeas corpus and, upon an assessment of the legality of the alleged unlawful detention, grants or denies the petition (see CPLR 7003[a]). CPLR 7003, on its face, does not stand for the proposition that a writ of habeas corpus must always be granted by the reviewing judge. To penalize a judge for acting in accordance with CPLR 7003(a) and exercising his or her judgment in considering a petition for a writ of habeas corpus by imposing a forfeiture would disturb the fundamental principles of the New York State Constitution and the foundational values of our democracy.
Therefore, while CPLR 7003(c) is not a direct diminution of judicial compensation, the language of that provision explicitly "targets judges for disadvantageous treatment," as it provides that a $1,000 forfeiture be paid personally by a judge who does not issue a writ of habeas corpus where one should have been issued (see id.; Bransten v State of New York, 30 NY3d at 439). CPLR 7003(c) is, thus, an indirect diminution of the salary of judges within the meaning of the Compensation Clause of the New York State Constitution. Accordingly, the Supreme Court [*13]properly determined that
"[b]y its nature, CPLR 7003(c) singles out judges for financially adverse treatment because of their exercise of their judicial functions and does so in a manner that discriminates based on how they decide an application for a writ. To impose a forfeiture on a judge based on which way they decide an application undermines the core objective of the [C]ompensation [C]lause of protecting judicial independence."
As such, the court properly denied the plaintiff's motion for summary judgment on the cause of action for the imposition of a $1,000 forfeiture against the defendant pursuant to CPLR 7003(c) and granted those branches of the defendant's cross-motion which were pursuant to CPLR 3211(a)(7) to dismiss the amended complaint and, in effect, for a judgment declaring that CPLR 7003(c) is unconstitutional because it violates the Compensation Clause of the New York State Constitution (cf. Bransten v State of New York, 30 NY3d at 446; Matter of Maron v Silver, 14 NY3d at 254). D. Separation of Powers Doctrine
Furthermore, even if this Court were to conclude that CPLR 7003(c) did not violate the Compensation Clause of the New York State Constitution, we would hold that the statute is an unconstitutional violation of the separation of powers doctrine. "[T]he government we fought for [is] one which should not only be founded on free principles, but in which the powers of government should be so divided and balanced among several bodies of magistracy, as that no one could transcend their legal limits without being effectually checked and restrained by others" (Madison, Federalist No. 48 [1788]). Consistent with this sacred tenet upon which our democracy is based, the New York State Constitution, like its federal counterpart, establishes a system in which the three branches of government possess coequal governmental powers (see Matter of Maron v Silver, 14 NY3d at 258; New York State Bankers Assn. v Wetzler, 81 NY2d 98, 105; Matter of County of Oneida v Berle, 49 NY2d 515, 522). "The doctrine has deep, seminal roots in the constitutional distribution of powers among the three coordinate branches of government" (Cohen v State of New York, 94 NY2d 1, 11). Implicitly, the separation of powers doctrine provides "that each branch is to exercise power within a given sphere of authority" (Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 821). Indeed, "[t]he separation of the three branches is necessary 'for the preservation of liberty itself,' and ' . . . each department should be free from interference, in the discharge of its peculiar duties, by either of the others'" (Matter of Maron v Silver, 14 NY3d at 258, quoting Matter of County of Oneida v Berle, 49 NY2d at 522 [internal quotation marks omitted]; see Matter of New York State Inspection, Sec. & Law Enforcement Empls., Dist. Council 82, AFSCME, AFL-CIO v Cuomo, 64 NY2d 233, 239). The Court of Appeals noted that the separation of powers doctrine "'is a structural safeguard rather than a remedy to be applied only when specific harm, or risk of specific harm, can be identified. In its major features . . . it is a prophylactic device, establishing high walls and clear distinctions because low walls and vague distinctions will not be judicially defensible in the heat of interbranch conflict'" (Matter of Maron v Silver, 14 NY3d at 260-261, quoting Plaut v Spendthrift Farm, Inc., 514 US 211, 239).
While "there are areas in which the responsibilities of the three great branches of government overlap or intersect, and in which powers cannot be immutably fixed" (Matter of County of Oneida v Berle, 49 NY2d at 523), "[t]here are some matters which are not subject to legislative control because they deal with the inherent nature of the judicial function" (Matter of A.G. Ship Maintenance Corp. v Lezak, 69 NY2d 1, 5; see Uniformed Firefighters Assn. of Greater N.Y. v City of New York, 79 NY2d 236, 242). The Compensation Clause is an example of such matter, as it "was enacted to preserve judicial independence" from legislative interference (Matter of Maron v Silver, 14 NY3d at 261; see O'Donoghue v United States, 289 US 516, 531). "[A]dequate judicial compensation is necessary to ensure that the public will have its matters heard by competent judges and that judges will be free to issue decisions in accordance with the law without fear of retribution by the other two branches of government" (Matter of Maron v Silver, 14 NY3d at 262 [citation omitted]). The United States Supreme Court similarly noted in United States v Will (449 US at 217-218) that "[a] Judiciary free from control by the Executive and the Legislature is essential if there is a right to have claims decided by judges who are free from potential domination by other branches of government."
By imposing a penalty on a judge who refuses a petitioner's request for habeas corpus [*14]relief where such relief should have been issued, the Legislature, through CPLR 7003(c), is interfering with judicial functions by incentivizing one specific outcome, namely, issuance of the writ, because a judge only faces a penalty if he or she refuses to issue a writ. Such influence is impermissible, as "'the mere existence of the power to interfere with or to influence the exercise of judicial functions contravenes the fundamental principles of separation of powers embodied in our State constitution and cannot be sustained'" (Roe v Board of Trustees of Vil. of Bellport, 65 AD3d 1211, 1212, quoting Matter of Catanise v Town of Fayette, 148 AD2d 210, 213). As perceptively noted by our sister states in analyzing their analogous forfeiture provisions, judicial discretion and judgment in considering a petition for a writ of habeas corpus is essential and the Legislature cannot interfere with that discretion and judgment through the imposition of a penalty (see Thomas v Lewis, 2001 UT 49, *P10, 26 P3d at 220; Oppenheimer v Ashburn, 173 Cal App 2d at 627, 343 P2d at 932; State ex rel. Walker v Dobson, 135 Mo at 10, 36 SW at 240).
The plaintiff's contention that the Legislature permissibly regulated the judiciary by enacting CPLR 7003(c) is unpersuasive. While article VI, section 30 of the New York State Constitution empowers the legislature "to alter and regulate the jurisdiction and proceedings in law and in equity," CPLR 7003(c) far oversteps that parameter by incentivizing a certain outcome. Imposing a $1,000 forfeiture on a judge who declines to grant a writ of habeas corpus after assessing the merits of such a petition clearly infringes on the discretionary power of the judiciary. Under the threat of the forfeiture provision, a judge may be inclined to grant a petition for habeas corpus relief without assessing the merits of the petition.
Thus, based on the foregoing analysis, as the defendant correctly contends, we hold that CPLR 7003(c) is an unconstitutional violation of the separation of powers doctrine. As such, the Supreme Court also should have denied the plaintiff's motion for summary judgment on the cause of action for the imposition of a $1,000 forfeiture against the defendant pursuant to CPLR 7003(c) and granted that branch of the defendant's cross-motion which was pursuant to CPLR 3211(a)(7) to dismiss the amended complaint on that basis, and should have granted that branch of the defendant's motion which was, in effect, for a judgment declaring that the CPLR 7003(c) is unconstitutional because it violates the separation of powers doctrine (see Matter of Catanise v Town of Fayette, 148 AD2d at 213).
IV. Conclusion
Accordingly, the defendant established, beyond a reasonable doubt, that CPLR 7003(c) is unconstitutional, as it violates the Compensation Clause of the New York State Constitution and the separation of powers doctrine.
The parties' remaining contentions either need not be reached in light of our determination or are without merit.
The order and judgment is modified, on the law, by adding thereto a provision declaring that CPLR 7003(c) is unconstitutional; as so modified, the order and judgment is affirmed.
DILLON, J.P., WARHIT and WAN, JJ., concur.
ORDERED that the order and judgment is modified, on the law, by adding thereto a provision declaring that CPLR 7003(c) is unconstitutional; as so modified, the order and judgment is affirmed, with costs.
ENTER:
Darrell M. Joseph
Clerk of the Court

Footnotes

Footnote 1: In October 2019, the defendant notified the New York State Attorney General pursuant to CPLR 1012(b) that she was challenging the constitutionality of CPLR 7003(c) as violating the Compensation Clause of the New York State Constitution and the separation of powers doctrine. The Attorney General has not taken any steps to intervene in this action.

Footnote 2: Interestingly, this case came after the Court of Appeals' decision in Nash v People; however, the Kentucky Superior Court relied upon the reasoning in Yates v Lansing for the proposition that the issuance of a writ of habeas corpus is discretionary and not ministerial.

Footnote 3: The plaintiff lists in her brief the states with a forfeiture provision relating to the issuance of writs of habeas corpus. These states are: Colorado, Illinois, Iowa, Michigan, Minnesota, Nevada, North Carolina, North Dakota, South Carolina, South Dakota, and Wyoming. Upon review of these states' analogous forfeiture provisions, it is not apparent that any of these states have ever imposed a forfeiture against a judge. Moreover, South Dakota repealed its forfeiture provision effective February 18, 2025 (see SD CL § 21-27-6, repealed by SL 2024 ch 76 § 1) by an act that was introduced by the Committee on Judiciary at the request of the Chief Justice (see 2024 SD HB 1084).